Theodore S. Kasler, J.
This is a motion for an order under sections 813-c, 813-d and 813-e of the Code of Criminal Procedure, suppressing the use of property allegedly unlawfully obtained as evidence in the above-entitled proceedings, wherein the defendant is charged with violation of section 165.40 of the Penal Law of the State of New York (criminal possession of stolen property in the third degree, a Class A misdemeanor).
The defendant herein was sentenced to Attica State Prison on April 8, 1965, having been convicted of robbery in the third degree, such sentence to expire on May 26, 1969. On March 14, 1968, the defendant was released on parole, having agreed to lead an honest and upright life, and to abide by the rules which he had signed. Among the conditions to which he agreed in such rules, paragraph 3 thereof stated as follows: “ I hereby consent to any search of my person, my residence or of any property or premises under my control which the Board of Parole or any of its representatives may see fit to make at any time in their discretion. ’ ’ At the time of his release on parole, the defendant came under the jurisdiction of the Division of Parole, and the supervision of John H. Ball, a parole officer.
The defendant was subsequently arrested for committing four unrelated crimes in the Town of Tonawanda on or about the 13th day of July, 1968, at approximately 3:00 to 4:00 a.m. As a result, he was remanded to the custody of the Sheriff of Brie County to await further criminal proceedings.
Sometime during the weekend of July 13414, 1968, Parole Officer Ball read, in a local newspaper, of the defendant’s arrest. He thereafter procured a warrant for violation of parole, authorizing the detention of the defendant, which warrant was served upon the Sheriff of Brie County, pursuant to section 216 of the Correction Law of the State of New York, on July 15,1968.
After serving the detention warrant upon the Sheriff, Mr. Ball, accompanied only by Parole Officer Janik, went to number 436 Franklin Street, Buffalo, New York, for the following purposes : ‘[1] to find out whether or not the room had been rented by Mr. Pelow; whether or not his belongings were there; and to *426 find out if anyone else had the key; and to ask the landlady to accompany us and open the room by means of a passkey for the purpose of a search.”
The parole officers, accompanied by the landlady, who permitted entry with a passkey, subsequently entered Room 9 at No. 436 Franklin Street, Buffalo, New York, without a warrant. During the search, the parole officers seized a typewriter which they found hidden under an overstaffed chair. At the time of such seizure, the parole officers had no knowledge of whether the typewriter, or anything else in the room, was the fruit of any crime. While the search was being conducted, it was determined that the defendant was the occupant of said room, that his clothing and belongings were in it, and that he had not been evicted but was in arrears for one week’s rent.
On the facts in the record, this court holds that the defendant was the occupant of Room 9 at No. 436 Franklin Street, Buffalo, New York, without further comment.
The question presented here is exactly the question presented to the court in People v. Langella (41 Misc 2d 65, 66) wherein it was stated: “ The question to be determined is whether, in view of defendant’s position as a parolee, the search, without a search warrant, was unreasonable under the circumstances in which it occurred.”
The parolee, because of his status as such, is subject to a different application of the laws, as distinguished from a citizen possessed of the full measure of civil rights. In the decision of the case before this court, research has revealed a clear and concise compilation of rules of law applicable to parolees in the case of People v. Quilon (245 Cal. App. 2d 624, 627) which are set forth as follows:
“ 1. A parolee does not stand discharged from prison, but merely serves the remainder of his sentence outside rather than within the prison walls. He is at all times in custodia legis and his physical apprehension by a parole officer is not an arrest. A search of his premises is not to be tested by the rules which apply to citizens who are possessed of full civil rights. (People v. Denne, 141 Cal. App. 2d 499 [297 P. 2d 451]; People v. Triche, 148 Cal. App. 2d 198, 202-203 [306 P. 2d 616]; People v. Robarge, 151 Cal. App. 2d 660, 665-666 [312 P. 2d 70]; People v. Hernandez, 229 Cal. App. 2d 143, 150 [40 Cal. Rptr. 100].)
“ 2. A parole officer needs neither a search warrant nor consent of a parolee in order to search the latter’s premises. (People v. Denne, supra; People v. Triche, supra; People v. Contreras, 154 Cal. App. 2d 321 [315 P. 2d 916]; People v. Gastelum, 237 Cal. App. 2d 205, 208-209 [46 Cal. Rptr. 743].) Nor does the *427 requirement of reasonable or probable cause apply to a search conducted by the parolee’s supervisor. (People v. Hernandez, supra, pp. 150-151.)
“ 3. The fact that a person is on parole does not in itself justify search by peace officers other than parole officers. (People v. Gallegos, 62 Cal. 2d 176 [41 Cal. Rptr. 590, 397 P. 2d 174].)
“ 4. But when a parole officer is justified in making a search, he may have the assistance of ordinary peace officers. (People v. Contreras, supra; People v. Triche, supra; People v. Hernandez, supra.) ”
In substance, these rules of law are followed in the State of New York. (See People v. Randazzo, 15 N Y 2d 526; People v. Langella, 41 Misc 2d 65, supra.)
However, the case before this court presents a unique fact situation which necessitates the application of New York rules of law. The salient facts of this case show that the petitioner was in the custody of the Sheriff of Erie County, having been charged by the police with four claims, other than parole violations, and had been incarcerated at the instance of a judicial tribunal, not at the instance of the Division of Parole. It is these two elements, viz: (1) a charge of crimes placed by police officers prior to any aid or intervention of a parole officer, and (2) custody at the instance of a judicial authority rather than as a result of an apprehension by his parole officer[1], that divest the Division of Parole of the custody of the person of the petitioner herein, albeit only temporarily, pursuant to the rule stated in Matter of Le Claire v. Oswald (21 AD 2d 17, 19) that: ‘ ‘ While it is true that a prisoner on parole is in the legal custody of the State (Correction Law, § 213) this constructive custody is terminated and the State’s prior jurisdiction is lost when the prisoner commits another crime in violation of the terms of his parole. (Matter of Perillo v. New York State Bd. of Parole, 4 A D 2d 355, affd. 4 N Y 2d 1013.) 1 When a parolee is arrested on a charge that he committed another crime, the Board of Parole has no control over him until the disposition of the charge and his return to prison. ’ (People ex rel. Paqua v. Fay, 8 A D 2d 856, affd. 8 N Y 2d 897; People ex rel. Leibowitz v. La Vallee, 17 A D 2d 887, mot. for lv. to app. den. 12 N Y 2d 645.) ”.
Therefore, since the Division of Parole was divested of jurisdiction of the petitioner herein, Parole Officer John H. Ball, though acting in the public interest and under color of authority, *428 had no authority to search the premises located at No. 436 Franklin Street, Buffalo, New York, based on the facts in the record before this court. Therefore, the motion to suppress is granted.

. In this regard, see People v. Hernandez (supra, p. 148), where it is stated: “The parolee, although physically outside the walls, is still a prisoner; his apprehension, although outwardly resembling arrest, is simply a return to physical custody.”