[No. 7967-4-II.   Division Two.   August 29, 1986.]

THE STATE OF WASHINGTON, *Respondent*, v. LINDA
MARIE LAMPMAN, *Appellant*.

---

*Mark F. Baum* and *Baum & Etengoff,* for appellant (appointed counsel for appeal).

*Arthur D. Curtis, Prosecuting Attorney,* and *Roger A. Bennett, Deputy,* for respondent.

REED, A.C.J.—Linda Lampman appeals the modification of her probation. She contends that the seizure of small amounts of marijuana and cocaine from her purse, which provided the basis for the probation modification, resulted from an illegal search and that such evidence should have been excluded from the probation revocation hearing. We affirm.

The facts are not in dispute. Linda Lampman was on probation from deferred sentences for second degree burglary and third degree assault. Among the terms and conditions of her probation were prohibitions relative to the possession and use of controlled substances and association with convicted felons or other probationers.

On February 10, 1984, Lampman's probation officer, Steven Sanders, observed Lampman walking along a street and another probationer, in a car, "yelling and gesturing at

Lampman." Upon observing Sanders, the probationer in the car drove off and Lampman, after scowling at Sanders, continued walking along the street. Sanders decided to follow Lampman to make sure that the two probationers did not associate. Lampman began to run "very rapidly", "continually looking over her right shoulder in the direction where she had last seen [Sanders], unaware that [Sanders] was following behind her." Lampman seemed "extremely nervous." Sanders decided to conduct a field search. He stopped her and had her empty her pockets and purse. Among the contents of her purse, Sanders found a pair of surgical tweezers with possible marijuana residue and a clear plastic bag with possible cocaine residue. Lab tests showed traces of marijuana and cocaine.

At the probation revocation hearing, Lampman stipulated to the facts contained in Sanders' violation report. Lampman moved to suppress the evidence seized in the warrantless search and the court denied that motion. The court found she had violated probation, and continued her on probation, but sentenced her to 30 days in jail, deferred on condition, *inter alia,* that she continue with a drug treatment program.

Before we need reach the issue of whether the search was illegal, we must determine whether the exclusionary rule applies in this situation. Washington courts have held that the exclusionary rule generally does not apply to parole or probation revocation hearings. *State v. Proctor,* 16 Wn. App. 865, 866, 559 P.2d 1363, *review denied,* 89 Wn.2d 1007 (1977); *State v. Simms,* 10 Wn. App. 75, 79–80, 516 P.2d 1088 (1973) (dictum), *review denied,* 83 Wn.2d 1007 (1974); *State v. Kuhn,* 7 Wn. App. 190, 194, 499 P.2d 49, *aff'd on other grounds,* 81 Wn.2d 648, 503 P.2d 1061 (1972). The rationale for not applying the exclusionary rule to probation revocation hearings was expressed by this court in *State v. Simms:*

> [A] holding that the exclusionary rule does not apply in revocation hearings is compelled by a consideration that although extension of the exclusionary rule to parole and

probation revocation hearings might have a desirable deterrent effect upon illegal official conduct, any such incremental deterrence is more than outweighed by the social consequences that would result from imposing such an impediment to blind the court or agency from relevant facts when it must make the delicate decision as to when a convicted person can be allowed to return to and remain in society.

The state has an overwhelming interest in being able to return the individual to imprisonment without the burden of a new adversary criminal trial if, in fact, the parolee has failed to abide by the conditions of his parole.

(Citations omitted.) *State v. Simms,* 10 Wn. App. at 79–80.

In *State v. Proctor, supra,* the court acknowledged a limited exception to the general rule when police act in bad faith in searching a probationer. The *Proctor* court stated:[1]

We agree that the exclusionary rule should not be extended to police searches that are not consciously directed toward probationers. However, there may be situations where the police are aware that a suspect is on probation, but conduct a good faith search which is later held to be unconstitutional. In this situation an extension of the exclusionary rule would serve no marginal deterrent effect. In our judgment only when the police act in bad faith should evidence which is illegally seized be suppressed in a probation revocation proceeding.

(Citation omitted.) 16 Wn. App. at 867.

However, the *Proctor* court, as did this court in *State v. Simms, supra,* and in *State v. Kuhn, supra,* based its holding on the Fourth Amendment and, since the *Proctor* decision, the Washington Supreme Court, on several occasions, has emphasized that article 1, section 7 of the state constitution provides broader protections than the Fourth Amendment. *See State v. Stroud,* 106 Wn.2d 144, 148, 720 P.2d 436 (1986); *State v. Myrick,* 102 Wn.2d 506, 510, 688

---

[1]The *Proctor* court's use of CrR 8.3 as a basis for vitiating the search is questionable in light of decisions limiting the rule's application to "governmental misconduct or arbitrary action." *See, e.g., State v. Starrish,* 86 Wn.2d 200, 206, 544 P.2d 1 (1975); *State v. Boldt,* 40 Wn. App. 798, 800, 700 P.2d 1186 (1985).

P.2d 151 (1984); *State v. Chrisman,* 100 Wn.2d 814, 818, 676 P.2d 419 (1984); *State v. Ringer,* 100 Wn.2d 686, 690, 674 P.2d 1240 (1984), *overruled in part in State v. Stroud, supra; State v. White,* 97 Wn.2d 92, 110, 640 P.2d 1061 (1982). This recent recognition of broader protections embodied in the state constitution necessitates that we reevaluate the applicability of the exclusionary rule to probation revocation hearings.

■ In *State v. White, supra,* the court determined that the Fourth Amendment and article 1, section 7 differ in emphasis. 97 Wn.2d at 110. The *White* court cited *Michigan v. DeFillippo,* 443 U.S. 31, 61 L. Ed. 2d 343, 99 S. Ct. 2627 (1979), for the proposition that the exclusionary rule is merely a remedial measure for Fourth Amendment violations. The *DeFillippo* Court noted that "[t]he purpose of the exclusionary rule is to deter unlawful police action." 443 U.S. at 38 n.3. *Accord, United States v. Janis,* 428 U.S. 433, 49 L. Ed. 2d 1046, 96 S. Ct. 3021 (1976); *United States v. Peltier,* 422 U.S. 531, 45 L. Ed. 2d 374, 95 S. Ct. 2313 (1975); *United States v. Calandra,* 414 U.S. 338, 38 L. Ed. 2d 561, 94 S. Ct. 613 (1974). By contrast, the emphasis of article 1, section 7 of the state constitution is on protecting an individual's right to privacy rather than on curbing governmental actions. *State v. White, supra.*

■ Guided by this emphasis on the right to privacy, we hold that article 1, section 7 requires application of the exclusionary rule, without exception, to probation revocation proceedings.[2] The exclusionary rule, under article 1, section 7, is a remedy for a violation of an individual's right to privacy. *State v. White,* 97 Wn.2d at 110. If a proba-

---

[2] Other courts, though a minority, apply the exclusionary rule, without exception, to probation revocation hearings. *See, e.g., United States v. Workman,* 585 F.2d 1205 (4th Cir. 1978) (applied balancing test prescribed in *United States v. Calandra,* 414 U.S. 338, 38 L. Ed. 2d 561, 94 S. Ct. 613 (1974)); *State v. Dodd,* 419 So. 2d 333 (Fla. 1982) (under state constitution); *State v. Burkholder,* 12 Ohio St. 3d 205, 466 N.E.2d 176 (under state constitution), *cert. denied,* 469 U.S. 1062, 83 L. Ed. 2d 432, 105 S. Ct. 545 (1984); *Adams v. State,* 153 Ga. App. 41, 264 S.E.2d 532 (1980); *Michaud v. State,* 505 P.2d 1399 (Okla. Crim. App. 1973) (rule applies to suspended sentence revocation).

tioner's right to privacy is violated, the exclusionary rule should be invoked regardless of the particular proceeding involved. A probationer, however, has a diminished expectation of privacy, which, in effect, means a diminished *right* of privacy. *See State v. Campbell,* 103 Wn.2d 1, 22–23, 691 P.2d 929 (1984), *cert. denied,* 471 U.S. 1094 (1985); *Hocker v. Woody,* 95 Wn.2d 822, 826, 631 P.2d 372 (1981); *State v. Simms,* 10 Wn. App. at 85–86. That diminished[3] expectation or right of privacy is reflected in the warrantless search exception that Washington courts apply to reasonable searches of probationers. *State v. Keller,* 35 Wn. App. 455, 459, 667 P.2d 139, *review denied,* 100 Wn.2d 1023 (1983); *State v. Simms, supra.* The standard for determining whether a warrantless search of a probationer is reasonable is whether the police or probation officer has a well founded suspicion that a probation violation has occurred. *State v. Coahran,* 27 Wn. App. 664, 666, 620 P.2d 116 (1980); *State v. Simms, supra.*[4]

The determination of whether a probationer's right to privacy has been violated is dependent, then, on the nature of the search conducted and is not dependent on the nature of the proceeding in which the fruits of the search are to be admitted. We do not perceive that this conclusion presents too costly an impediment to the probation process. *Accord, United States v. Workman,* 585 F.2d 1205 (4th Cir. 1978). The goals of the probation process can no doubt be accomplished with rules and procedures that provide both the necessary societal protections as well as the necessary constitutional protections.

Having determined that the exclusionary rule is applica-

---

[3]By "diminished right of privacy" is meant that, insofar as the State has a continuing interest in the defendant and its supervision of him *as a probationer,* the defendant can expect state officers and their agents to scrutinize him closely and search his person, home and effects on less than probable cause.

[4]Both *Coahran* and *Simms* involved parolees rather than probationers, but a parolee's and a probationer's interests in due process and privacy are the same. *State v. Keller,* 35 Wn. App. at 459 n.6; *State v. Simms,* 10 Wn. App. at 79; *see also Gagnon v. Scarpelli,* 411 U.S. 778, 36 L. Ed. 2d 656, 93 S. Ct. 1756 (1973).

ble in this case, we must now determine whether it must be invoked. The question is whether Lampman's probation officer had a well founded suspicion that Lampman had violated the conditions of her probation. We find that he did have such a suspicion.

■ The basis for the probation officer's suspicion was Lampman's conduct following her observation of him. Sanders saw Lampman running rapidly and continually looking over her shoulder in the direction she had seen Sanders. Flight, in such circumstances where the person fleeing is aware she is fleeing a law enforcement official, colors conduct that might otherwise appear innocent.[5] *United States v. Pope,* 561 F.2d 663, 668–69 (6th Cir. 1977). Lampman's flight must also be viewed in the circumstances of her relationship to her probation officer from whom she was fleeing and who was aware of her history and of the conditions of her probation. Although knowledge of an individual's prior conviction does not provide probable cause to believe that the individual is, at any time thereafter, engaging in criminal activity so as to support warrant-

---

[5]"The wicked flee when no man pursueth: but the righteous are bold as a lion." *Proverbs* 28:1. *See Alberty v. United States,* 162 U.S. 499, 509, 40 L. Ed. 1051, 16 S. Ct. 864 (1896), where the Court refuses to accept this biblical pronouncement as "an accepted axiom of criminal law", so as to support an instruction couched in such terms, but agrees that evidence of flight is proper circumstantial evidence of guilt. *See also Hickory v. United States,* 160 U.S. 408, 40 L. Ed. 474, 16 S. Ct. 327 (1896), to the same effect.

As stated by Justice, then Judge, Cardozo in his concurring opinion (endorsed by the majority) to *People v. Shilitano,* 218 N.Y. 161, 182, 112 N.E. 733, 740 (1916): "Flight, even after accusation, is some evidence of guilt; but flight before accusation is persuasive evidence."

Although flight from law enforcement officials is, by itself, not sufficient to justify probable cause for an arrest, *see Sibron v. New York,* 392 U.S. 40, 66–67, 20 L. Ed. 2d 917, 88 S. Ct. 1889 (1968), such flight may, in appropriate circumstances, satisfy the standard required for an investigative stop. *United States v. Pope,* 561 F.2d 663, 669 n.6 (6th Cir. 1977); *United States v. Vasquez,* 534 F.2d 1142, 1145 (5th Cir.), *cert. denied,* 429 U.S. 979, 50 L. Ed. 2d 587, 97 S. Ct. 489 (1976); *United States v. Rundle,* 461 F.2d 860, 864 (3d Cir. 1972). The test for the reasonableness of a search of a parolee or probationer, set out in *State v. Simms,* was adopted from the similar test for the validity of an investigative stop in *Terry v. Ohio,* 392 U.S. 1, 9, 20 L. Ed. 2d 889, 88 S. Ct. 1868 (1968).

less search, *State v. Hobart,* 94 Wn.2d 437, 446–47, 617 P.2d 429 (1980), similar knowledge in the probation context may be considered, along with other facts, in support of a warrantless search of a probationer. Given that the standard for the reasonableness of such a search is a well founded suspicion *that a probation violation has occurred,* knowledge of the probationer's terms of probation and past history is an appropriate factor to consider in this determination of the reasonableness of the warrantless search.

Lampman's behavior in fleeing from Sanders in the manner she did, combined with Sanders' knowledge of Lampman's problems with drugs and the prohibition against possessing or using drugs as a condition of her probation, provided a well founded suspicion that Lampman was violating the terms of her probation. The search was therefore reasonable and the trial court acted properly in admitting the evidence seized.

Affirmed.

PETRICH and ALEXANDER, JJ., concur.