[No. 8070–6–III.   Division Three.   April 21, 1988.]

THE STATE OF WASHINGTON, *Respondent,* v. KEITH M. PATTERSON, *Appellant.*

*Jeffrey Barker,* for appellant (appointed counsel for appeal).

*Paul A. Klasen, Prosecuting Attorney,* and *Mary Ann Brady, Deputy,* for respondent.

McINTURFF, C.J.—Mr. Patterson was convicted of first degree robbery and three counts of second degree assault following denial of his motion to suppress evidence. We affirm.

A man, armed with a revolver, robbed the Jackpot Service Station (Jackpot) in Ephrata, on November 9, 1985. At this time three youths were in the store playing video games. When the robber left the store on foot, the youths followed him but returned to tell the clerk the robber had fired a gun at them. The police arrived and took a description of the suspect.

On December 10 or 11 an anonymous telephone caller told the police department the suspect they were looking for in the armed robbery was being held in Chelan County for the burglary of a Save–Mart store. A photograph of Mr. Patterson, a suspect in the Save–Mart burglary, was obtained from Chelan County and used in photo montages.

The clerk on duty in the Jackpot at the time of the robbery was shown two sets of six photos including both profile and frontal views. Mr. Patterson's profile was the only one looking to the right. The clerk could not identify the suspect from the profile pictures, but did identify him tentatively from the frontal views. Subsequently, he picked Mr.

Patterson out of a lineup as well. Mr. Patterson was the only person who appeared in both the photo montages and the lineup.

Mr. Patterson was a parolee and in jail in Chelan County on a charge of burglary at the time his car was searched by a parole officer without a warrant in connection with the Jackpot robbery. A Ruger firearm was found in the car. Conditions of Mr. Patterson's parole included not possessing firearms and submitting to a search of his person, residence, vehicle, and possessions whenever requested by his probation and parole officer.

The court denied Mr. Patterson's motion to suppress the evidence seized in the search of his car and the identifications based on the photo montages and lineup, but did exclude Mr. Bedient's identification because it was tainted by Mr. Horn's selection. (Mr. Bedient and Mr. Horn were two of the youths in the store at the time of the robbery.)

The first issue is whether Mr. Patterson's Fourth Amendment rights, or article 1, section 7 rights under our state constitution were violated by the warrantless search of his vehicle. The State argues Mr. Patterson, as a parolee in custody, has a diminished expectation of privacy, such that the warrantless search of his vehicle was not an unreasonable search and seizure.

## A
### ARTICLE 1, SECTION 7

Article 1, section 7 of our state constitution provides broader protections than the Fourth Amendment. *State v. Stroud,* 106 Wn.2d 144, 148, 720 P.2d 436 (1986). The purpose of article 1, section 7, is to protect an individual's right to privacy rather than curb governmental actions. *State v. Lampman,* 45 Wn. App. 228, 232, 724 P.2d 1092 (1986).

A series of appellate cases establish an exception to the warrant requirement for searches of parolees. A probationer has a diminished right to privacy; a warrantless search of a probationer is reasonable if a police officer or a probation

officer has a well founded suspicion that a probation viola-
tion has occurred. *Lampman,* at 233; *State v. Coahran,* 27
Wn. App. 664, 666, 620 P.2d 116 (1980); *State v. Simms,* 10
Wn. App. 75, 516 P.2d 1088 (1973), *review denied,* 83
Wn.2d 1007 (1974).

A warrantless search of a parolee's residence, upon an
anonymous tip that controlled substances were in the resi-
dence, was held unreasonable. *Simms,* at 87. Although a
warrantless search of a parolee's residence may be con-
ducted upon less than probable cause, before a police officer
may forcibly enter the residence of a parolee without a
warrant, on a tip of an informant, the information on which
the officer acts must carry some indicia of reliability to
support the inference that the informant is telling the truth
and the officer must have a well founded suspicion a parole
violation has occurred.[1] *Simms,* at 87–88.

*State v. Campbell,* 103 Wn.2d 1, 22–23, 691 P.2d 929
(1984), *cert. denied,* 471 U.S. 1094, 85 L. Ed. 2d 526, 105 S.
Ct. 2169 (1985) held the warrantless search of an inmate's
car by a work release supervisor did not violate either the
Fourth Amendment or Const. art. 1, § 7, rejecting the con-
tention that a second search of the car pursuant to a search
warrant was tainted by an earlier search in which the work
release supervisor was acting as an agent of the State. The

---

[1] *State v. Coahran, supra,* recognized the rule of *State v. Simms, supra,* that a parolee's automobile may be searched by parole officers or the police as their agents, upon less than probable cause given well founded suspicion. A citizen informant provided the necessary well founded suspicion when he conveyed to police that a parolee had threatened him. *Coahran,* at 667.

But see *Hocker v. Woody,* 95 Wn.2d 822, 826, 631 P.2d 372 (1981) (cited *Simms* and *Coahran* for the proposition that there was a body of law holding parolees have diminished Fourth Amendment rights, but held it was limited to searches of the parolee, his home and his effects and thus not applicable to the facts in *Hocker* where a third party's residence was searched), and *State v. Keller,* 35 Wn. App. 455, 457, 667 P.2d 139, *review denied,* 100 Wn.2d 1023 (1983) (war-rantless search of a probationer's residence was not justified by the person's status as a probationer when the probation condition permitting warrantless searches was not explicitly made a condition of the person's release pending appeal which stayed the condition of probation that defendant shall submit to a search of resi-dence, person and vehicle upon request of his supervising probation officer).

search by the work release supervisor was reasonable to obtain the raincoat of a fellow resident in the work release program which was believed to contain evidence of alcohol use. At the time of the searches of Campbell's car, he had been taken into custody and his work release suspended.

## B
### FOURTH AMENDMENT

*Griffin v. Wisconsin,* ___ U.S. ___, 97 L. Ed. 2d 709, 107 S. Ct. 3164 (1987) held the warrantless search of a probationer's home, pursuant to a Wisconsin regulation of placing the standard of probable cause by "reasonable grounds", satisfied the Fourth Amendment.[2] The Court carefully limited its holding to searches of probationers carried out pursuant to rules and regulations that satisfy the Fourth Amendment's reasonableness requirement and did not hold that any search of a probationer's home by a probation officer satisfied the Fourth Amendment as long as a parole officer had "reasonable grounds". *Griffin,* 107 S. Ct. at 3167.[3]

Other states have also considered variations on the Fourth Amendment reasonableness requirement to search probationers and parolees. *People v. Coffman,* 2 Cal. App.

---

[2]Mr. Griffin's parole officer received a tip from a police detective that there "were or might be" guns in Griffin's apartment. *Griffin,* 107 S. Ct. at 3166. State regulations permitted a search of a probationer's home without a warrant as long as the supervisor of the probation officer approved and there existed "reasonable grounds" to believe the probationer possessed contraband which was defined to include firearms. Mr. Griffin was arrested for possession of a firearm by a convicted felon, a felony, following a search of his home. *Griffin,* 107 S. Ct. at 3166–67.

[3]The rationale for its holding includes the special need of the State to supervise those convicted of serious crimes which permits a degree of impingement on privacy that would not be constitutional if applied to the public at large. The Court also considered the special needs of Wisconsin's parole system justifying a search regulation: (1) a warrant requirement would interfere with the probation system by setting up a magistrate rather than a probation officer as the judge of needed supervision, (2) delay inherent in obtaining a warrant would make it more difficult to respond to evidence of misconduct, and (3) reduction in the deterrent effect would occur if the possibility of expeditious searches was reduced.

3d 681, 82 Cal. Rptr. 782 (1969) held a warrantless search of a parolee's apartment by a parole officer, at the request of a police officer while the parolee was in jail, violated the Fourth Amendment. Where a parole agent is not engaged in administering his supervisory functions but rather his presence was a ruse, calculated to supply color of legality to a warrantless entry of a private dwelling, the search is not reasonable under the Fourth Amendment. *Coffman,* 82 Cal. Rptr. at 786.

But in *People v. Burgener,* 41 Cal. 3d 505, 714 P.2d 1251, 224 Cal. Rptr. 112, 127 (1986), police relayed information to a parole agent who authorized a search of the apartment of the woman with whom Mr. Burgener was staying; the search was made on the evening following Mr. Burgener's arrest. The court balanced the parolee's privacy interest with the societal interest in public safety in determining the proper scope of the warrantless search condition as a term of parole. *People v. Bravo,* 43 Cal. 3d 600, 738 P.2d 336, 341, 238 Cal. Rptr. 282 (1987), *cert. denied,* 108 S. Ct. 1074 (1988).[4]

Mr. Patterson cites *People v. Pelow,* 59 Misc. 2d 424, 299 N.Y.S.2d 20, 23 (1969) (a parolee charged with crimes other than violation of parole prior to intervention by a parole

---

[4]LaFave discusses *Coffman* and *Burgener,* pointing to the factual distinctions between the two cases—in *Coffman* the police contacted the parole officer and asked him to accompany them on a search the police had decided to make; in *Burgener* the police reported their suspicions to the parole officer and the parole officer authorized a search to be conducted by the police. 4 W. LaFave, *Search and Seizure* § 10.10(e), at 156–59 (2d ed. 1987). But the fact that the parole officer authorized the search was insufficient. 4 W. LaFave, at 157 (quoting *People v. Way,* 65 Misc. 2d 865, 319 N.Y.S.2d 16 (1971)) states:

> [I]f a parolee's "privacy is to be invaded from time to time for the protection of the public, and for his rehabilitation, this may be done only by his parole officer in the course of and for the purpose of effectively supervising him," and "may not be done for the prime purpose of circumventing the ordinary constitutional processes for the convenience of law enforcement officers in the course of their investigation."

4 W. LaFave, at 156–57, cites other cases both which would find a search invalid under the Fourth Amendment if the primary purpose of the parole officer's authorized search was to aid in a criminal investigation and those which would permit such cooperation.

officer and in custody at the instance of judicial authority rather than due to apprehension by his parole officer is not within the jurisdiction of the division of parole. A parole officer had no authority to search his premises without a warrant). Mr. Patterson also cites *State v. Cullison,* 173 N.W.2d 533, 537 (Iowa), *cert. denied,* 398 U.S. 938 (1970) (a parolee has the same Fourth Amendment rights as any other citizen—the warrantless search of his apartment by a parole officer with a police officer assisting him, absent probable cause, was unreasonable).

We conclude that under our Washington Constitution there exists an exception to the warrant requirement which allows a search based on reasonable suspicion. Our courts have not addressed whether the exception would permit a warrantless search of a parolee's car while the parolee was in custody. But, we agree with the analysis of the California court in *People v. Burgener, supra,* that a balancing of the parolee's privacy interest with the societal interest in public safety is necessary to determine the proper scope of the warrantless search condition in Mr. Patterson's parole agreement, assuming reasonable suspicion existed to search Mr. Patterson's car.

Mr. Patterson's parole officer testified he made the decision to search the car although he was encouraged to do so by a police contact. Further, the parole officer was still acting in a supervisory capacity (although assisting the police in their investigatory capacity) because there was a parole hold on Mr. Patterson and the parole officer needed information, such as possession of a gun, to support his parole suspension. The societal interest in suspending the parole of a felon who has violated the conditions of parole is sufficient to outweigh the privacy interest of the parolee. Having balanced the competing interests, we conclude the fact Mr. Patterson was in custody at the time his vehicle was searched did not make this search unreasonable under the Fourth Amendment or our Washington Constitution.

Finally, we must decide whether the parole officer had reasonable grounds based on a reliable informant to search

Mr. Patterson's vehicle. Here the tip to the police came from an anonymous caller; therefore, Mr. Patterson argues the information the police had was not reliable enough to justify the search.

This is not a case of a search based on an anonymous tip alone. The anonymous tip led to more evidence. First, Mr. Patterson's photo was tentatively identified by the clerk in the Jackpot store. Second, witnesses stated the robber of the Jackpot store had been armed with a revolver. Third, the police had information there might be a gun in the car; a detective had received information from Mr. Wines (partner in Apple Valley Distributing where the car was stored) there may be a gun in the car. We hold this constituted reasonable suspicion to search Mr. Patterson's car without a warrant.

The conviction of Mr. Patterson is affirmed.

Pursuant to RCW 2.06.040, the remaining contentions and the court's answers to those contentions, having no precedential value, will not be published.

GREEN and MUNSON, JJ., concur.

Review denied by Supreme Court September 1, 1988.