936 P.2d 1210 (1997)
86 Wash.App. 431
The STATE of Washington, Respondent,
v.
David Lloyd RAINFORD, Appellant.
Nos. 19929-7-II, 21296-0-II.
Court of Appeals of Washington, Division 2.
May 16, 1997.
As Amended May 23 and June 20, 1997.
*1211 Rachel Anne Brooks, Prosecuting Attys. Office, Carmon Danny Clem, Clallam County Deputy Prosecuting Atty., Port Angeles, for Respondent.
John Francis Hayden, Port Angeles, for Appellant.
BRIDGEWATER, Acting Chief Judge.
David L. Rainford appeals his conviction for possession of a controlled substance, heroin, under RCW 69.50.401(d). We hold that reasonable suspicion is required to conduct a "dry cell" search and that Rainford's constitutional rights were not violated even though Clallam Bay Correction Center did not follow exactly their procedure for a dry cell search. Further, Rainford's conviction and enhancement for possession within a correctional facility do not violate equal protection because a statute specific to inmates' possession of controlled substances is not concurrent with the general statute prohibiting possession, and the prosecuting attorney had discretion to charge under either statute. We affirm.
Clallam Bay Correctional Center authorities initiated an investigation into the possibility that drugs were being introduced into the facility when a part of a plastic baggie was found in the visitor's toilet, which prison officials believed was consistent with a container that would be used to secrete drugs within the body. Prison investigator Hanson investigated the three prisoners who had visitors that day and focused on inmate Rainford because he was the only one incarcerated for drug offenses. Rainford's wife was a known drug addict, and his cellmate, Shornhorst, was suspected of smuggling drugs. Hanson examined letters and an audio tape from Rainford and Shornhorst to Mrs. Rainford and determined that they showed that the Rainfords might be involved in smuggling drugs into the prison by secreting them within their bodies. The investigators summarized this information for the Superintendent, and he authorized the guards to conduct a dry cell search after Rainford's next visit with his wife.[1] A dry cell search was initiated and prison officials recovered two balloons filled with heroin from Rainford's feces. Rainford was convicted of possession *1212 of a controlled substance under RCW 69.50.401(d). The standard sentence was enhanced by 12 months under former RCW 9.94A.310(4)(c) (1994) because the offense occurred while the offender was in a state correctional facility.

I
Rainford contends that the dry cell search violated his Fourth Amendment and Washington Constitution article I, section 7 rights. Rainford makes two separate arguments: (1) that there was no reasonable suspicion for the search, and (2) that the prison officials violated his constitutional rights by failing to follow their own procedure for dry cell searches.

A
The trial court found that the prison had "a reasonable suspicion ... that the Defendant had contraband within his body after being visited by his wife." Where findings of fact and conclusions of law are supported by substantial but disputed evidence, an appellate court will not disturb the trial court's ruling. State v. Smith, 84 Wash.2d 498, 527 P.2d 674 (1974); State v. Chapman, 84 Wash.2d 373, 526 P.2d 64 (1974). See also House v. Erwin, 83 Wash.2d 898, 524 P.2d 911 (1974). The State argues that there was reasonable articulable suspicion based upon the following facts: a piece of a baggie was found in the visitor's toilet on a day when Rainford's wife was visiting; Rainford was incarcerated for drug offenses; Mrs. Rainford was a known drug addict; and letters and a tape from Rainford to his wife indicated Rainford's drug use and contained covert references to drug smuggling. These facts are sufficient to form a reasonable articulable suspicion that Rainford would have drugs within his person after his wife's visit.
Rainford argues, however, that greater certainty is required under article I, section 7. The federal constitution provides the minimum protection afforded citizens against unreasonable searches by the government. State v. Chrisman, 100 Wash.2d 814, 817, 676 P.2d 419 (1984). Whether the Washington Constitution provides a level of protection different from the federal constitution in a given case is determined by reference to the six nonexclusive Gunwall factors.[2]State v. Boland, 115 Wash.2d 571, 575, 800 P.2d 1112 (1990); State v. Gunwall, 106 Wash.2d 54, 720 P.2d 808, 76 A.L.R.4th 517 (1986). The parties must adequately brief the Gunwall factors to enable the reviewing court to consider an independent state constitutional analysis in the case. State v. Wethered, 110 Wash.2d 466, 472-73, 755 P.2d 797 (1988). When violations of both the federal and Washington constitutions are alleged, it is usually appropriate to examine the state constitutional claim first. Seattle v. Mesiani, 110 Wash.2d 454, 456, 755 P.2d 775 (1988). However, our analysis begins with federal law only to place the state law in context.
Under the Fourth Amendment, while an inmate is "`not wholly stripped of constitutional protections when (they are) imprisoned for crime,'" many of the inmate's rights and privileges are subject to limitation because institutional goals and policies take precedence. State v. Hartzog, 96 Wash.2d 383, 391, 635 P.2d 694 (1981) (quoting Wolff v. McDonnell, 418 U.S. 539, 555-56, 94 S.Ct. 2963, 2974-75, 41 L.Ed.2d 935 (1974); see also Bell v. Wolfish, 441 U.S. 520, 545-46, 99 S.Ct. 1861, 1877-78, 60 L.Ed.2d 447 (1979)). In evaluating whether body cavity searches violate the Fourth Amendment, the Supreme Court employs a reasonableness test, stating that: "In each case it requires a balancing of the need for the particular search against the invasion of personal rights that the search entails. Courts must consider the scope of the particular intrusion, the manner in which it is conducted, the justification for initiating it, and the place in which it is conducted." Bell, 441 U.S. at 559, 99 S.Ct. at 1884. In *1213 Bell, the Court found that visual body cavity inspections could be conducted on less than probable cause if the search is reasonable and not conducted in an abusive fashion. Bell, 441 U.S. at 558-60, 99 S.Ct. at 1884-85. The Bell court does not state what level of cause is required, but the decision validated a practice of visual body cavity search of all inmates after contact visits. Reasonable suspicion is sufficient in a prison setting to protect the inmate's reasonable expectation of privacy under the Fourth Amendment, so long as the search is not conducted in an abusive fashion. The dry cell search here passes the Bell balancing test. The justification for the search is to protect prison inmates and employees by preventing the introduction of drugs and contraband into the prison. This justification was validated in Bell. Furthermore, the search was conducted in the least offensive manner possible; no inmates or unnecessary guards were allowed to watch Rainford while he was contained, and he has not alleged that he was subjected to unnecessary humiliation. While a dry cell search is in some ways more intrusive than a visual body cavity search because it is of a longer duration, it is also less intrusive because there is no physical probing of the person. Reasonable suspicion is adequate cause to initiate a dry cell search.
Rainford argues that under the Washington Constitution, article I, section 7, he is entitled to more protection for dry cell searches, but in so arguing, he fails to cite to any cases giving prisoners greater protection under the state constitution. Rainford discusses the Gunwall factors only in the most general sense; his references are to cases discussing the generally accepted concept that the language in article I, section 7 differs from the Fourth Amendment such that it may extend broader protection, but that otherwise do not apply to this fact pattern. See, e.g., Gunwall, 106 Wash.2d 54, 720 P.2d 808. However, the Gunwall analysis does not end with a textual comparison. Rainford must show state policy considerations that would lead the court to extend greater protection in the particular situation presented by this case, which he does not do. Rainford has failed to show by statute or case law that greater protection is extended to prisoners under article I, section 7 than under the Fourth Amendment. In fact, Rainford has not cited to any cases that analyze a prisoner's expectation of privacy under the Washington Constitution.
Washington courts have held that an inmate's expectation of privacy is necessarily lowered while in custody and that warrantless searches may be conducted if reasonable. State v. Campbell, 103 Wash.2d 1, 23, 691 P.2d 929 (1984). Even probationers and parolees have a diminished right of privacy, permitting reasonable warrantless searches. See, e.g., State v. Patterson, 51 Wash.App. 202, 204, 752 P.2d 945 (1988). Washington allows routine pat-down search of prisoners even without articulable suspicion. See State v. Baker, 28 Wash.App. 423, 623 P.2d 1172 (1981). Thus, while these facts present an issue of first impression under the Washington Constitution, we find that a dry cell search initiated based on reasonable articulable suspicion, conducted in a manner that is not abusive, is reasonable under article I, section 7. Reasonable suspicion is all that is required under either the fourth amendment to the United States Constitution or article I, section 7 of the Washington Constitution for a dry cell search. The dry cell search in this case was based on a reasonable suspicion and was not conducted in an abusive fashion. This dry cell search was, therefore, constitutional.

B
Rainford also argues that prison authorities did not follow their regulations in that they failed to record specific evidence creating reasonable suspicion, failed to respond to his comments on the reverse side of the authorization form, failed to give him the opportunity to voluntarily retrieve the drugs, and failed to conduct a medical examination of him before the dry cell search.[3] *1214 While Rainford has not specifically framed his argument as a due process problem, he cites two due process cases: United States v. Smith, 774 F.2d 1005 (10th Cir.1985) and United States v. Caldwell, 750 F.2d 341 (5th Cir.1984).[4] The trial court also addressed Rainford's argument on due process grounds, finding that minimum standards of due process were followed.
Rainford has not cited to any Washington cases holding that a prison's failure to follow procedure is a per se violation of the due process clause or any other constitutional provision. Moreover, the two out-of-state cases he does cite, Smith and Caldwell, stand for the rule that the prison authorities violate due process when they fail to follow the administrative rule requiring reasonable suspicion for dry cell searches. There was reasonable suspicion in this case. Neither case uses technical violations of policy to invalidate a dry cell search. The violations Rainford alleges are all highly technical violations that do not violate due process. While prison officials did not list on their internal form all the facts amounting to reasonable suspicion, these facts were related to the Superintendent, and he found reasonable suspicion. Thus, this error was merely technical. Rainford was then given the form and returned it with his comment that the process was humiliating, but he did not request review by the Superintendent. Thus, there was no error. Rainford's other claimed errors in procedure are likewise insufficient for a claim that his due process rights were violated.[5]

II
Rainford argues in his Personal Restraint Petition, consolidated herein with his appeal, that his conviction was unlawful because he should have been charged under RCW 9.94.041, a statute specific to inmates, rather than RCW 69.50.401.
If a general and a special statute are concurrent, the accused can be charged only under the special statute. State v. Shriner, 101 Wash.2d 576, 580, 681 P.2d 237 (1984). Criminal statutes are considered concurrent if a general statute is violated whenever a special statute is violated, regardless of whether the special statute may contain additional elements not contained in the general statute. Id. In other words, "the special statute will supersede the general only `[s]o long as it is not possible to commit the special crime without also committing the general crime'." State v. Williams, 62 Wash.App. 748, 753-54, 815 P.2d 825 (1991) (alteration from original). Violation of this rule can result in an equal protection *1215 violation "because the State, by selecting the crime charged, can obtain varying degrees of punishment while proving identical criminal elements." State v. Hupe, 50 Wash.App. 277, 280, 748 P.2d 263, review denied, 110 Wash.2d 1019 (1988).
Rainford was charged under RCW 69.50.401(d), which states in relevant part: "[i]t is unlawful for any person to possess a controlled substance." Former RCW 9.94.041 (1979) stated that any inmate of a correctional institution of this state "who, without authorization, while in such penal institution ... knowingly possesses or carries upon his or her person or has under his or her control any narcotic drug or controlled substance as defined in chapter 69.50 RCW is guilty of a class C felony."[6] Under RCW 69.50.401(d), possession of marijuana violates that statute only when it is in an amount greater than 40 grams. However, possession of any amount of marijuana is a violation of RCW 9.94.041. Thus, it is possible to violate RCW 9.94.041 without violating RCW 69.50.401(d).
For purposes of this analysis, we treat section (d) as separate from section (e). In State v. Jendrey, 46 Wash.App. 379, 730 P.2d 1374 (1986), this court held that different degrees of a crime are treated differently in the concurrency analysis. The court held that while criminal possession of rental equipment, RCW 9A.56.095, is concurrent with first degree theft, RCW 9A.56.030, it is not concurrent with second degree theft, RCW 9A.56.040, because criminal possession of rental equipment only applies to equipment with a value of more than $1,500, like first degree theft, while second degree theft applies only to property with a value of $250 to $1,500. Id. This reasoning seems equally applicable to sections (d) and (e) of RCW 69.50.401; like degrees of theft, these sections define by quantity conduct to which different degrees of punishment will be applied. Section (d) is a felony, while section (e) is a misdemeanor. Thus, the two sections are degrees of the same crime and are analyzed separately under concurrency analysis.
Therefore, because it is "possible to commit the special crime without also committing the general crime," these two statutes are not concurrent. This anomalous result, where a specific statute results in less punishment and is not concurrent with the general, happens because of legislative inadvertence. We are critical of this result because it is illogical with what we would perceive as an appropriate legislative schemethat is, having a special statute dealing with prisoners who are in possession of controlled substances in prisons.[7] But correction rests with the Legislature, not with the court.
Because the statutes are not concurrent, the prosecuting attorney has the discretion to charge either crime, and the fact that the sentences are disparate is not of constitutional moment.[8]
We affirm the conviction and dismiss the Personal Restraint Petition.
MORGAN and ARMSTRONG, JJ., concur.
NOTES
[1] A "dry cell search" or "dry cell watch" is conducted by placing the inmate in a private room under 24-hour observation until he has three consecutive normal bowel movements. The officers then examine the feces for any sign of drugs.
[2] The following factors are to be considered in determining if the state constitution provides greater protection: (1) the textual language of the state constitution; (2) significant differences in the texts of parallel provisions of the federal and state constitutions; (3) state constitutional and common law history; (4) preexisting state law; (5) differences in structure between the federal and state constitutions; and (6) matters of particular state interest or local concern. State v. Gunwall, 106 Wash.2d 54, 61-62, 720 P.2d 808 (1986).
[3] The internal policies applicable to Clallam Bay Corrections Center provided that:

(1) Before an offender is placed on a dry cell search, an authorization on DOC Form 21-408 (REV.3/91) Dry Cell Search (Attachment A), must be completed. The form is to record specific evidence relied upon by the Superintendent/Acting Superintendent to determine the existence of reasonable suspicion.
(2) Within one hour after the offender is initially placed on a dry-cell search, a copy of DOC 21-408 (with all confidential information which could lead to the identification of informant sources removed/blacked out) will be given to the offender. If the offender wishes to request a review of the dry-cell placement, this must be done in writing on the reverse side of DOC 21-408 within eight hours of the initial placement. The offender's completed response then will be evaluated by the Superintendent/Acting Superintendent.
The Superintendent/Acting Superintendent's review must be attested to by checking either the "retain on dry cell search" or "release from dry cell search" box on the reverse side of the DOC 21-408, along with a dated signature. An in-person hearing need not be held....
The instructions also state that the offender must be afforded the opportunity to voluntarily retrieve the contraband, and the offender must be examined by a member of the medical staff to assure that the dry cell search will not physically harm the offender.
[4] "Failure by the warden in the instant case to comply with [C.F.R. § 552.11(c)] ... is violative of due process." Smith, 774 F.2d at 1006 (citation omitted).
[5] Rainford challenges the prison's failure to perform a medical examination on him before the search, as set forth in the regulations. But Rainford did not have any medical problems during the dry cell search, and the mere lack of an examination is not a circumstance so extreme as to place the whole procedure in question, so this error is also harmless. Nor was there a constitutional violation in the alleged failure to give Rainford the opportunity to voluntarily surrender the drugs. There is no evidence that this opportunity was not given, only that there was no documentation showing that Rainford was given the opportunity to surrender the drugs and none of the officers specifically remembered one way or the other. The regulations do not require documentation. Thus, neither of these errors is of constitutional dimension.
[6] Curiously, RCW 9.94.041 is an unranked felony under the Sentencing Reform Act of 1981 and is not subject to enhancement for possession within a correctional facility under RCW 9.94A.310(5)(c).
[7] Correction also needs to be made with regard to the enhancement statute, RCW 9.94A.310(5)(c), and to the ranking of RCW 9.94.041 under the Sentencing Reform Act of 1981.
[8] Rainford would have received 12-months' incarceration as violation of the unranked felony RCW 9.94.041; but he received 41 months for violation of RCW 69.50.401(d) with a 12-month enhancement for violation of RCW 9.94A.310(5)(c), for a total of 53 months.