IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| STATE OF WASHINGTON, | ) | No. 71522-4-I |
| | ) | |
| Respondent, | ) | |
| | ) | DIVISION ONE |
| v. | ) | |
| | ) | |
| LISA LIPPINCOTT, | ) | UNPUBLISHED OPINION |
| | ) | |
| Appellant. | ) | FILED: June 29, 2015 |
| | ) | |

BECKER, J. — When this case went to the jury, an unnecessary element was included in the to-convict instructions. Because the State failed to prove the unnecessary element, appellant's eight convictions for second degree identity theft must be reversed. A conviction for possession of stolen property must also be reversed because it was the product of a warrantless probation search that was not supported by reasonable suspicion.

Three officers set out to execute an arrest warrant for appellant Lisa Lippincott. The warrant was issued because Lippincott failed to report to her community custody officer as required by conditions imposed upon her by the Department of Corrections.

The officers located Lippincott at a gas station in south Seattle. Department of Corrections Officer Kristoffer Rongen arrested Lippincott and immediately began to search her purse. He found keys and five gift and prepaid

credit cards. Rongen knew that Lippincott had a prior conviction for identity theft, and he had previously encountered Lippincott in an identity theft investigation. Rongen also knew that Lippincott was unemployed. Seeing the gift and prepaid credit cards caused Rongen to suspect that Lippincott was failing to report for supervision because she had become involved in identity theft once again.

Rongen asked Lippincott where she lived. Lippincott said she lived with her father in Renton. Rongen did not believe this answer because one of the other officers had been told by a confidential informant that Lippincott lived at a particular apartment in Federal Way. Rongen suspected that Lippincott was lying about her residence in order to prevent the officers from searching the Federal Way apartment. Rongen suspected that the Federal Way apartment was Lippincott's true residence and that it was likely to contain evidence of new identity theft offenses.

The officers took Lippincott with them to the Federal Way apartment to search it. Lippincott admitted that she lived there. Inside, the officers found bags full of identity documents including checks, bank statements, social security cards, credit cards, passports, birth certificates, and other personal documents. They also found thousands of pages of blank check-making paper. Rongen determined that the front door at the Federal Way apartment could be operated by a key obtained from Lippincott's purse.

The State charged Lippincott with 10 counts of second degree identity theft and 1 count of possessing stolen property in the third degree. All charges stemmed from items found within Lippincott's apartment. Eight of the 10 counts

2

of identity theft involved copies of canceled rent checks written by tenants who lived at an apartment complex. The remaining two counts of identity theft involved copies of drivers' licenses. The charge of possession of stolen property related to paycheck stubs that were not Lippincott's.

Lippincott moved to suppress the fruits of the search of her Federal Way apartment under CR 3.6. The trial court denied the motion, and the cause proceeded to trial. A jury found Lippincott guilty as charged except for one of the counts of identity theft. Lippincott appeals.

## SUFFICIENCY OF THE EVIDENCE

Evidence is sufficient to support a conviction if, when viewed in the light most favorable to the State, a trier of fact could find all elements of a crime were proved beyond a reasonable doubt. State v. Salinas, 119 Wn.2d 192, 201, 829 P.2d 1068 (1992).

The crime of identity theft is set forth in RCW 9.35.020. The portion of that statute relevant to this appeal states:

> (1) No person may knowingly obtain, possess, use, or transfer a means of identification or financial information of another person, living or dead, with the intent to commit, or to aid or abet, any crime.
>     (2) Violation of this section when the accused or an accomplice violates subsection (1) of this section and obtains credit, money, goods, services, or anything else of value in excess of one thousand five hundred dollars in value shall constitute identity theft in the first degree. Identity theft in the first degree is a class B felony punishable according to chapter 9A.20 RCW.
>     (3) A person is guilty of identity theft in the second degree when he or she violates subsection (1) of this section under circumstances not amounting to identity theft in the first degree. Identity theft in the second degree is a class C felony punishable according to chapter 9A.20 RCW.

3

account];

(2) That the defendant acted with the intent to commit or to aid or abet any crime;

(3) *That the defendant obtained credit or money or goods or services or anything else that is $1500 or less in value from the acts described in element (1); or did not obtain any credit or money or goods or services or other items of value; and*

(4) That any of these acts occurred in the State of Washington.

If you find from the evidence that each of these elements has been proved beyond a reasonable doubt, then it will be your duty to return a verdict of guilty as to Count 1.

On the other hand, if, after weighing all of the evidence, you have a reasonable doubt as to any one of these elements, then it will be your duty to return a verdict of not guilty as to Count 1.

(Emphasis added.)

Element 3 was unnecessary. If an unnecessary element is included in a to-convict instruction without objection, the State assumes the burden of proving the added element. State v. Hickman, 135 Wn.2d 97, 102-03, 954 P.2d 900 (1998).

Lippincott contends the State failed to prove element 3. We agree. At trial, the State focused only on the first two elements. The State elicited evidence that Lippincott knowingly possessed copies of the canceled rent checks and drivers' licenses with the intent to commit additional crimes. As the State concedes, none of the evidence established that Lippincott used the stolen identity information to obtain something valued at less than $1,500 or that she did not obtain anything of value by possessing the information. The State did not address the third element during its closing argument.

Because the State failed to prove the unnecessary element included in the to-convict instructions for identity theft in the second degree, those convictions must be reversed.

5

ILLEGAL SEARCH

Lippincott also claims her motion to suppress the evidence found in the Federal Way apartment was improperly denied because both her purse and the apartment were searched without a warrant. The State relies on the probation search exception to the warrant requirement.

Lippincott first contends that a probation search exception does not exist under article I, section 7 of the Washington Constitution. We do not agree with Lippincott's reading of the case law. Several cases have considered article I, section 7 and have nevertheless held that it is not offended by permitting warrantless searches of persons who are subject to conditions of probation if the search is reasonable. See, e.g., State v. Patterson, 51 Wn. App. 202, 204-05, 208, 752 P.2d 945, review denied, 111 Wn.2d 1006 (1988); State v. Lucas, 56 Wn. App. 236, 239-41, 783 P.2d 121 (1989), review denied, 114 Wn.2d 1009 (1990); State v. Reichert, 158 Wn. App. 374, 386-87, 242 P.3d 44 (2010), review denied, 171 Wn.2d 1006 (2011).

The second and more significant issue raised by Lippincott is whether the search exceeded the permissible scope of a warrantless probation search. The probation search exception to the warrant requirement is codified by statute. It requires the searching officer to have "reasonable cause" to believe the offender has violated a condition of sentence.

> If there is reasonable cause to believe that an offender has violated a condition or requirement of the sentence, a community corrections officer may require an offender to submit to a search and seizure of the offender's person, residence, automobile, or other personal property.

RCW 9.94A.631(1). A warrantless search of a probationer is reasonable if a police or probation officer "has a well founded suspicion that a probation violation has occurred." Patterson, 51 Wn. App. at 205; accord Lucas, 56 Wn. App. at 244.

At the suppression hearing, Rongen testified that he had the right to search Lippincott's purse, car, and residence simply because he knew she was on warrant status and that she was failing to report for supervision.

> For Department of Corrections if somebody's on warrant status or we believe there's information that they have violated their terms of supervision, we have the right to search their person, place or vehicle or residence, and that's what I was doing at the time she was taken into custody.

Such testimony by itself is not enough to establish a reasonable suspicion. After Lippincott's opening brief was filed in this appeal, this court issued an opinion rejecting the State's argument that "any parole violation justifies any search for any other violation." State v. Jardinez, 184 Wn. App. 518, 525, 338 P.3d 292 (2014). Jardinez makes the point that warrantless searches of probationers are not unlimited in scope. Jardinez, 184 Wn. App. at 523-30.

Rongen also articulated a suspicion that Lippincott's failure to report meant that she was likely reoffending. The trial court found that Rongen had a reasonable suspicion that Lippincott was again engaged in identity theft based on the presence of the gift cards and credit cards found in her purse. The court did not separately find a justification for the search of the purse. The court stated its reasoning in written findings and conclusions:

> The Court finds that Officer Rongen's search of the defendant's purse was justified, Officer Rongen had reasonable

7

suspicion that the defendant was in further violation of her conditions of supervision and that evidence of further violation would be found at the defendant's residence, and Officer Rongen had probable cause to believe that the defendant lived at the residence searched.

The defendant was under DOC supervision at the time, and had outstanding warrants for which she was arrested. After contacting the defendant and placing her under arrest, Officer Rongen searched the defendant's purse. As a result of the search of the defendant's purse, Officer Rongen located prepaid credit cards and gift cards, as well as a key (which was later found to be the key to the front door of the listed residence). Based on the totality of the facts known to Officer Rongen at the time (including his knowledge of the defendant, the defendant's criminal history which included convictions for Identity Theft, as well as his training and experience and knowledge of identity theft suspects and things they commonly possess), Officer Rongen had a reasonable suspicion that the defendant was in violation of her terms of probation and that further evidence of fraudulent activity would be found at the defendant's residence.

There must be a "nexus between the searched property and the alleged crime." Jardinez, 184 Wn. App. at 529. Here, the State fails to establish a nexus between the purse and any alleged crime that would justify the warrantless search of the purse. The officers stopped Lippincott because she was wanted for failure to report and there was a warrant for her arrest. No one claims that evidence of the violation of failure to report was likely to be found in Lippincott's purse. Her purse was searched based on a belief that it might contain evidence of identity theft. The officer's reasoning—that a probationer who fails to report is likely involved in the same type of criminal behavior as in the past and is trying to avoid detection—is too attenuated to be considered a well-founded or reasonable suspicion. Possibly, the search of the purse could have been justified on the basis of a search incident to arrest, but as the State concedes, the record was

8

not developed on that theory and it does not establish where Lippincott's purse was located at the time of arrest.

The warrantless search of the purse produced the gift cards and prepaid credit cards, items pivotal to the trial court's decision to uphold the warrantless search of the apartment. All items of evidentiary value found in Lippincott's purse and apartment should have been suppressed as fruit of the poisonous tree. Without that evidence, all of the convictions are unsupported.

Reversed.

Becker, J.

WE CONCUR:

Trickey, J.