[No. 18379-3-III.  Division Three.  January 9, 2001.]

THE STATE OF WASHINGTON, *Respondent*, v. CAREY VIRGINIA FISHER, *Appellant*.

absence of a concession by the tenant or daily photographs, we cannot see how Hwang could enforce the rule.

*William D. McCool*, for appellant.

*James L. Nagle, Prosecuting Attorney*, and *Gabriel E. Acosta, Deputy*, for respondent.

KURTZ, C.J. — After pleading guilty to possession and delivery of methamphetamine, Carey V. Fisher was released on bail. While she awaited sentencing, the court issued a bench warrant for her arrest based on the prosecutor's affidavit indicating that Ms. Fisher had been spending a considerable amount of time with a known drug user. While executing the bench warrant, police searched Ms. Fisher's purse. The search revealed controlled substances and paraphernalia. Ms. Fisher was convicted and appeals, contending the trial court erred by issuing the bench warrant because it was not supported by probable

cause. Additionally, Ms. Fisher contends the court erred by finding that a statement by a friend indicating that the friend had a surprise for Ms. Fisher was inadmissible hearsay. We conclude that because Ms. Fisher had been adjudicated guilty of a felony and had been released pending sentencing, the court could authorize her detention based upon a well-founded suspicion that a probation violation had occurred. We further conclude that the trial court properly excluded the statement as hearsay. We affirm Ms. Fisher's conviction.

## FACTS

Carey Fisher pleaded guilty to possession and delivery of methamphetamine, arising out of events that occurred in 1998. Before entry of her plea and sentencing, she was released after she posted bail. The court issued, and Ms. Fisher signed, an order establishing the conditions of her release. Four days after entering her guilty plea, she was arrested on a bench warrant.

The warrant was issued based on an application made by Deputy Prosecuting Attorney Gabriel Acosta, the deputy assigned to Ms. Fisher's drug case. Mr. Acosta presented an affidavit to the court indicating that he had received information from Ms. Fisher's community corrections officer, Alice Rogers. Ms. Rogers was contacted by a probationer who asserted she was an acquaintance of Ms. Fisher's. The probationer reported that she overheard Ms. Fisher declare that there was "no way she was going to stick around for sentencing" and that Ms. Fisher appeared high on drugs during her plea.

Mr. Acosta's affidavit also stated that he had been contacted by the grandmother of Ms. Fisher's child. The grandmother reported that Ms. Fisher had been spending considerable time at a known drug user's home, including spending one night there, and that she was using drugs at that residence.

Mr. Acosta's affidavit concluded by stating that he was

informed by Walla Walla Police Department Detective Ascencion Castillo that Ms. Fisher had been observed at a known drug user's home on several occasions since she was released on bail.

On the basis of Mr. Acosta's affidavit, the court entered an Order for Issuance of Bench Warrant. Subsequently, Ms. Fisher was arrested. Upon the arrest, Ms. Fisher's purse was seized and searched. The purse contained controlled substances and paraphernalia. As a result, Ms. Fisher was charged with possession of methamphetamine, marijuana, and drug paraphernalia.

Ms. Fisher moved to suppress the evidence discovered in the search because she contended the bench warrant was issued without probable cause. The motion was denied because the trial court found that a warrant can be issued on the basis of a well-founded suspicion, rather than probable cause.

During trial, Ms. Fisher testified she left her purse at Kelly Hall's house for several days. She sought to testify that Ms. Hall said to her, "I have a surprise for you." Ms. Fisher offered the testimony to explain why she tried to get rid of her purse when the police arrived to arrest her. The court initially excluded the statement as hearsay. The court later ruled that even if it was admissible as non-hearsay, it should be excluded under ER 403.

A jury convicted Ms. Fisher. Ms. Fisher moved for a new trial based on the court's exclusion of the statement by Ms. Hall. The court denied the motion. Ms. Fisher appeals.

## ANALYSIS

Ms. Fisher contends that the court erred by issuing an order authorizing a bench warrant for her arrest and therefore erred by refusing to suppress the evidence discovered during the arrest. In essence, she argues that because probable cause for the arrest was lacking in her case, the evidence discovered in the purse should have been suppressed.

The Washington State Constitution provides that: "No person shall be disturbed in his private affairs, or his home invaded, without authority of law." CONST. art. I, § 7. The parties agree that the "authority of law" for Ms. Fisher's arrest was CrR 3.2(j)(1). The court rule reads as follows:

> *Arrest With Warrant.* Upon the court's own motion or a verified application by the prosecuting attorney alleging with specificity that an accused has willfully violated a condition of the accused's release, a court shall order the accused to appear for immediate hearing or issue a warrant directing the arrest of the accused for immediate hearing for reconsideration of conditions of release pursuant to section (i).

Significantly, CrR 3.2(j)(1) does not specifically require the existence of probable cause for the issuance of a bench warrant. Read literally, this section of the court rule authorizes the issuance of a bench warrant based upon specific and verified allegations.

In this regard, it is useful to compare subsection (1) with subsection (2) of CrR 3.2(j). Subsection (2) reads:

> *Arrest Without Warrant.* A law enforcement officer having *probable cause* to believe that an accused released pending trial for a felony is about to leave the state or has violated a condition of such release under circumstances rendering the securing of a warrant impracticable may arrest the accused and take him forthwith before the court for reconsideration of conditions of release pursuant to section (i).

(Emphasis added.) Subsection (2) authorizes an arrest only if the law enforcement officer has probable cause to believe either that the accused is about to leave the state or has violated the conditions of release. In either instance, there is an additional requirement of exigent circumstances that renders the securing of a warrant impracticable.

Here, Ms. Fisher's arrest was authorized by a warrant that was issued based upon the verified application of the prosecuting attorney. Ms. Fisher argues that even though CrR 3.2(j)(1) does not literally require probable cause for the issuance of an arrest warrant, the probable cause

requirement is mandated by the Fourth Amendment to the United States Constitution, which provides:

> **SECURITY FROM UNWARRANTABLE SEARCH AND SEIZURE.** The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no warrants shall issue, but upon probable cause, supported by oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized.

Ms. Fisher argues that the Fourth Amendment applies to subsection (1) of CrR 3.2(j) because it applies, without limitations, to every warrant for the purpose of physically restraining a person. She bases this argument upon *Bacon v. United States*, 449 F.2d 933 (9th Cir. 1971) and *State v. Klinker*, 85 Wn.2d 509, 537 P.2d 268 (1975).

In *Klinker*, the issue concerned the constitutionality of two statutes that authorized the detention of an alleged father for the purpose of paternity litigation. Like CrR 3.2(j)(1), the statutes authorized the detention based upon information and belief, without requiring a determination of probable cause by the judge issuing the warrant. The alleged father could be released before the hearing, but only if he posted bail. In its analysis, the Supreme Court concluded that the detention of the purported father was the equivalent of a criminal arrest for the purposes of the Fourth Amendment. *Klinker*, 85 Wn.2d at 516.

The Supreme Court determined that the warrant authorized by the two statutes did not satisfy the constitutional requirements of the Fourth Amendment. A seizure under the Fourth Amendment must be preceded by a determination that there is probable cause to believe that the person to be detained committed the act for which the law authorizes detention. Probable cause has been defined as " 'a reasonable ground of suspicion, supported by circumstances sufficiently strong in themselves to warrant a cautious man in believing the accused to be guilty.' " *State v. Scott*, 93 Wn.2d 7, 11, 604 P.2d 943 (1980) (quoting *State v. Todd*, 78 Wn.2d 362, 365, 474 P.2d 542 (1970)). The magis-

trate making that determination must be neutral and detached. In *Klinker*, the statutes violated the Fourth Amendment because the arrest warrant was issued based upon "conclusions drawn by investigating officers or prosecutors." *Klinker*, 85 Wn.2d at 518.

Ms. Fisher argues that if CrR 3.2(j)(1) authorizes the issuance of warrants for seizures without a prior showing of probable cause, it is unconstitutional. However, Ms. Fisher contends that the rule does not authorize the issuance of warrants without a showing of probable cause. Rather, Ms. Fisher maintains that we should infer from a reading of the entire court rule that the rule contains a probable cause requirement. But, she further argues that the warrant authorizing her seizure was defective because it was not issued by a judge based upon a determination of probable cause. Rather, like the warrant in *Klinker*, it was issued upon the presentment of allegations to the court. And, while these allegations may create a suspicion that she violated the terms of her release, they do not rise to the level of probable cause.

The Fourth Amendment establishes a probable cause standard for both seizures of property and persons. In response to Ms. Fisher's Fourth Amendment argument, the State asserts that we should apply to her detention the exception to the probable cause requirement that case law has established for searches of probationers and parolees. Although Ms. Fisher had not been sentenced by the court, the court had accepted her plea of guilty and entered an order adjudicating her guilty of the two felonies. Thus, her legal status under the Fourth Amendment, according to the State, should be like that of a probationer and a parolee, as opposed to a presumptively innocent, accused person.

The State relies upon *State v. Lucas*, 56 Wn. App. 236, 783 P.2d 121 (1989). In *Lucas*, the court ordered a probationer to submit to a search of his person, residence, vehicle, and other belongings when ordered to do so by the community corrections officer. *Id.* at 237-38. When the corrections officer became suspicious regarding Mr. Lucas's compliance

with the drug laws, the corrections officer conducted a warrantless search. On appeal, the issue was whether the officer's warrantless search required probable cause or a well-founded suspicion.

Generally, searches without a valid warrant are per se unreasonable unless a public interest exception exists to the general warrant requirement. *Id.* at 239. Such an exception exists for probationers and parolees, who have a diminished right of privacy that permits a warrantless search, if reasonable. *Id.* at 240. For these reasons, the court concluded that the probation officer need have only a well-founded suspicion, not probable cause, to search Mr. Lucas. The rationale for excepting probationers and parolees is that a person judicially sentenced to confinement but released on parole remains in custody while serving the remainder of the sentence. *Id.* Additionally, these individuals have a diminished right of privacy because " 'the State has a continuing interest in the defendant and its supervision of him *as a probationer.*' " *Id.* (quoting *State v. Lampman*, 45 Wn. App. 228, 233 n.3, 724 P.2d 1092 (1986)).

Similarly, the State has a continuing interest in convicted felons who are released pending appeal. *Lucas*, 56 Wn. App. at 240-41. The stay of execution acts to preserve the status quo pending appeal; however, it does not release an appellant from the obligation to serve the full penalty imposed by the sentence. As a result, felons released pending appeal have the same diminished privacy expectation as probationers and parolees. *Id.* at 241.

For the same reasons that the State has a continuing interest in probationers, parolees and convicted felons free pending appeal, it has a continuing interest in admitted felons awaiting sentencing. In this case, Ms. Fisher was released prior to her plea under an Order Establishing Conditions of Release Pending Trial Pursuant to CrR 3.2. One of the conditions imposed was that "defendant have no violation of any criminal laws." Additionally, the order signed by Ms. Fisher states, "I agree to follow the conditions and understand that a violation will lead to my arrest and

may be punishable by contempt of court. I also understand that my pretrial release may be revoked in the event of violation." After Ms. Fisher pleaded guilty, the court accepted her guilty plea and allowed her to remain free pending sentencing. Under RCW 10.64.025(1), the court may release a defendant who is awaiting sentence if it finds by clear and convincing evidence that the defendant is not likely to flee or to pose a danger to the safety of others or the community if released.

Given Ms. Fisher's status after pleading guilty to possession and delivery of methamphetamine, the court had a continuing interest in supervising her. The court's continuing interest in supervising Ms. Fisher is the same interest the court has in supervising parolees, probationers, and convicted felons whose sentences are stayed pending appeal. That is, the court has a continuing interest in supervising Ms. Fisher because she has pleaded guilty to a felony and, by virtue of her plea, she has submitted herself to the supervision of the court. Because Ms. Fisher occupies a similar legal position, she should have the same diminished privacy expectations under the Fourth Amendment of the United States Constitution. As a result, we conclude that probable cause was not required for the issuance of the bench warrant for her arrest. In order to obtain a bench warrant under CrR 3.2(j)(1) for a person who has been adjudicated guilty of a felony and released pending sentencing, the court need require only a well-founded suspicion that a probation violation has occurred.

■ Generally, an anonymous tip reporting a violation will not support a well-founded suspicion. *See State v. Simms*, 10 Wn. App. 75, 516 P.2d 1088 (1973) (warrantless search upon anonymous tip that drugs were in the residence was held unreasonable). However, an anonymous tip combined with other evidence may support a well-founded suspicion. *See State v. Patterson*, 51 Wn. App. 202, 752 P.2d 945 (1988). In *Patterson*, an anonymous caller provided Mr. Patterson's name as a suspect in a robbery. Witnesses also identified him as the robber. Additionally, police received

information from a known source that Mr. Patterson might have a gun in his car. The court found that the combined evidence arose to a well-founded suspicion of a probation violation.

In this case, Mr. Acosta asserted he was told by Alice Rogers, a corrections officer, that a probationer of hers was an acquaintance of Ms. Fisher who reported she overheard Ms. Fisher say she was not planning to appear for sentencing. The probationer also thought Ms. Fisher appeared to be high on drugs at the hearing. Additionally, the grandmother of Ms. Fisher's child told him that Ms. Fisher had been spending considerable amounts of time at a known drug user's home, including spending at least one night there. Finally, Detective Castillo told Mr. Acosta that he observed Ms. Fisher at a known drug user's home on several occasions.

Taken together, this information provides a well-founded suspicion of a violation of the conditions of Ms. Fisher's release. While the unidentified probationer's observations alone would likely not be sufficient, the remaining evidence corroborates that Ms. Fisher was spending time with a known drug user. Additionally, it is not clear how the grandmother knew about Ms. Fisher's whereabouts, but this deficiency is irrelevant because the fact was corroborated by the detective's report. Finally, the mere fact that Ms. Fisher was spending a considerable amount of time with a known drug user might not rise to probable cause to believe she had violated the conditions of her release by violating criminal laws. However, this information does support a well-founded suspicion that Ms. Fisher might be violating the conditions of her release and therefore violating criminal laws.

■ Because sufficient evidence was presented that provided a well-founded suspicion of a violation of Ms. Fisher's release, the arrest warrant was properly issued. It follows that the evidence discovered incident to the arrest was properly admitted.

Ms. Fisher contends that the court erred by failing to

allow her to testify about Ms. Hall's statement indicating that Ms. Hall had a surprise for her. Ms. Fisher contends that the court erred by ruling this was inadmissible hearsay, because it was offered to prove not the truth of the matter, but rather her state of mind about ridding herself of her purse during her arrest.

■ Hearsay is "a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." ER 801(c). Whether a statement is hearsay depends upon the purpose for which the statement is offered. Statements not offered to prove the truth of the matter asserted, but rather as a basis for inferring something else, are not hearsay. *State v. Collins*, 76 Wn. App. 496, 498-99, 886 P.2d 243 (1995).

In this case, the statement Ms. Fisher wanted to introduce was Ms. Hall stating that she had a surprise for Ms. Fisher. Ms. Fisher had left her purse in Ms. Hall's possession, and therefore wanted to introduce the statement to show why she tried to give her purse to her mother when the police arrived. Ms. Fisher claimed she did not want to introduce the statement to prove the truth of the matter— whether Ms. Hall really did have a surprise for her—but to show her state of mind about the purse in which drugs were discovered. However, Ms. Hall's statement, if true, could indicate that Ms. Fisher was in the unwitting possession of drugs given to her as a surprise by Ms. Hall. In other words, Ms. Fisher wanted the jury to hear the statement so it could infer that the drugs found in her purse were placed there by Ms. Hall. As the court concluded, then, Ms. Fisher sought to introduce the statement in order to prove the truth of the matter—the drugs were placed in her purse by Ms. Hall. As such, the court correctly concluded that Ms. Fisher sought to introduce the statement to prove the truth of the matter, and properly excluded it as hearsay.

Affirmed.

SWEENEY and SCHULTHEIS, JJ., concur.

Review denied at 144 Wn.2d 1002 (2001).