35 P.3d 366 (2001)
STATE of Washington, Respondent,
v.
Carey Virginia FISHER, Petitioner.
No. 70760-0.
Supreme Court of Washington, En Banc.
Argued October 23, 2001.
Decided December 6, 2001.
*368 William David McCool, Walla Walla, John G. Ziegler, Waitsburg, for Petitioner.
James Lyle Nagle, Walla Walla County Prosecutor, for Respondent.
*367 SMITH, J.
Petitioner Carey Virginia Fisher seeks review of a decision of the Court of Appeals, Division III, which upheld her conviction in the Walla Walla County Superior Court for violations of the Uniform Controlled Substances Act, chapter 69.50 RCW, and concluded that an order authorizing a bench warrant for violation of the conditions of her release pending sentencing in a prior case under Criminal Rule (CrR) 3.2(j)(1) did not require a showing of probable cause, but required only a well founded suspicion of a violation of those conditions. We granted review. We affirm in part and reverse in part.

QUESTION PRESENTED
The question presented in this case is whether CrR 3.2(j)(1), authorizing a superior court to issue a bench warrant for arrest upon a verified application alleging with specificity willful violation of a condition of release, requires a showing of probable cause for issuance of a bench warrant for a defendant previously found "guilty" and released on conditions pending sentencing.

STATEMENT OF FACTS
On September 3, 1998 Petitioner Carey Virginia Fisher was arrested in Walla Walla County for possession of methamphetamine.[1] She posted bail on September 8, 1998.[2] On October 23, 1998 she was arrested for delivery of a controlled substance.[3] She was granted a conditional release on personal recognizance on December 23, 1998, on a $7,500 appearance bond which "may be satisfied by bail posted in XX-X-XXXXX-X" [Petitioner's earlier case].[4] The conditions of the order, signed by the Honorable Robert L. Zagelow, were as follows:[5]
Defendant will keep in regular contact with defendant's attorney.
Travel is restricted to Walla Walla County and/or_____.
Defendant shall reside at 966 Dawson, College Place, Washington; and shall not change place of residence without court permission.
That the defendant have no personal contact with State's witnesses.
That the defendant have no violation of any criminal laws.
On January 4, 1999 Petitioner pleaded "guilty" in the Walla Walla County Superior Court to possession of methamphetamine and delivery of a controlled substance arising out of her 1998 arrests.[6]
*369 On January 7, 1999, Gabriel E. Acosta, Deputy Prosecuting Attorney for Walla Walla County, by application and affidavit asked the court to issue a bench warrant for Petitioner's arrest for violation of conditions of her release.[7] The application and affidavit read in its entirety:
1. I am the assigned deputy prosecuting attorney in the case of State v. Carrie Fisher, Cause Nos. 98-1-00330-5 and 98-1-00371-2.
2. CCO Alice Rogers informed me on January 7, 1999, that a client (probationer) of hers told her that she was present at the January 4, 1999, docket when defendant Fisher pled guilty in the above stated cause numbers, and overheard Ms. Fisher say that there was no way she was going to stick around for sentencing. This client also told CCO Rogers that she could tell that Ms. Fisher was high on drugs at the time of the change of plea hearing, and that she also is acquainted with Ms. Fisher. CCO Rogers stated that the client's information was unsolicited and not the reason for the contact with the client.
3. Your affiant was also informed by the grandmother of Ms. Fisher's child in the last week that she knows Ms. Fisher had been spending considerable time, since posting bail, at a known drug user's home, including spending at least one night there, and using drugs there.
4. Finally, your affiant was informed by WWPD Det. Castillo that he had been surveilling a known drug user's home here in Walla Walla, and observed Ms. Fisher present there on several occasions since being released on bail.[[8]]
The court, the Honorable Donald W. Schacht, on January 7, 1999 granted the Deputy Prosecuting Attorney's request and authorized a bench warrant for Petitioner's arrest to show cause, if any, why she did not obey the terms of her release.[9]
At trial before Judge Donald W. Schacht, Detective Castillo testified that he went to the Fisher residence to serve the bench warrant on January 7, 1999.[10] He stated that, as soon as he came on the scene, a vehicle pulled up and parked in front of the residence.[11] He observed Petitioner and her mother alight from the vehicle.[12] As Petitioner started walking toward the mailboxes, Detective Castillo told her the Prosecutor's office needed to talk to her,[13] but he did not place her under arrest because Officer Steve Harris, his backup, had not arrived.[14] While Petitioner proceeded toward the fenced area of the residence, Officer Harris arrived. Detective Castillo then served the bench warrant and placed Petitioner under arrest.[15]
According to Detective Castillo's testimony, Petitioner then asked why she was going to jail and why she was under arrest.[16] He told her there was a bench warrant for her arrest.[17] He testified that during the arrest Petitioner attempted to hand the purse in her possession to her mother who stood about 8 to 10 feet away.[18] Detective Castillo intercepted the purse and told Petitioner "the purse was going with her." He testified that Petitioner then began to resist arrest.[19] She dropped the purse on the ground. When Detective Castillo reached for it, Petitioner picked it up and swung it at him several times.[20] He also stated that prior to *370 his placing Petitioner in Officer Harris' patrol car, she cried out "[d]on't take the purse. I don't need any more charges. I'm already going to prison."[21]
Officer Harris took custody of the purse and transported Petitioner to the Walla Walla County Jail.[22] Incident to the arrest, Officer Harris searched the purse and found two bindles containing methamphetamine in a plastic film canister, marijuana, and drug paraphernalia.[23] On January 15, 1999, in the Walla Walla County Superior Court, Petitioner was charged by amended information as follows:

Count 1; VIOLATION OF THE UNIFORM CONTROLLED SUBSTANCE ACTPOSSESSION OF METHAPHETAMINE, RCW 69.50.401(d), Class C Felony (5 years or fine of $10,000 or both);

Count 2: VIOLATION OF THE UNIFORM CONTROLLED SUBSTANCE ACTPOSSESSION LESS THAN 40 GRAMS OF MARIJUANA, RCW 69.50.401(e), Misdemeanor (90 days or fine of not more than $1,000);

Count 3: VIOLATION OF THE UNIFORM CONTROLLED SUBSTANCE ACTPOSSESSION OF DRUG PARAPHERNALIA, RCW 69.50.412(1), Misdemeanor (90 days or fine of not more than $1,000);

Count 4: ASSAULT IN THE THIRD DEGREE, RCW 9A.36.031(1)(a) and/or (g), Class C Felony (5 years or fine of $10,000 or both);
committed as follows, to-wit:

Count 1: That the said CAREY VIRGINIA FISHER, in the County of Walla Walla, State of Washington, on or about the 7th day of January, 1999, did possess a controlled substance, to-wit: Methamphetamine, a Schedule II non-narcotic;

Count 2: That the said CAREY VIRGINA FISHER, in the County of Walla Walla, State of Washington, on or about the 7th day of January, 1999, did possess a controlled substance, to-wit: less than 40 grams of Marijuana, a Schedule I non-narcotic;

Count 3; That the said CAREY VIRGINIA FISHER, in the County of Walla Walla, State of Washington, on or about the 7th day of January, 1999, did unlawfully possess drug paraphernalia, to-wit: needles, a plastic canister and bindles for containing drugs, and cotton for use as a filter;

Count 4: That the said CAREY VIRGINA FISHER, in the County of Walla Walla, State of Washington, on or about the 7th day of January, 1999, with intent to prevent or resist the lawful apprehension or detention of herself and/or while performing his official duties at the time of assault, did assault Detective Castillo, a law enforcement officer, to-wit: struck at Detective Castillo with her purse;
contrary to the form of the statute in such cases made and provided, and against the peace and dignity of the State of Washington.[24]
Petitioner testified that prior to her arrest on the bench warrant, she and her mother, Ms. Jaekel Fisher, stopped by the residence of a friend, Ms. Kelly Hall, to pick up a purse Petitioner had left there three days earlier.[25] Petitioner claimed that, as she left the Hall residence, Ms. Hall made a comment concerning the purse ("I have a surprise for you").[26] Petitioner attempted to introduce this statement to explain her reactions to the purse and police.[27] But the court granted the State's motion in limine to preclude the statement as hearsay.[28]
Prior to trial, on February 23, 1999 Petitioner moved to suppress the evidence obtained at the time of her arrest and to dismiss the charges on grounds that the bench *371 warrant was issued without probable cause.[29] Judge Robert L. Zagelow denied the motions, holding that cases such as State v. Lucas and State v. Simms indicate probationers and parolees, who are in somewhat similar status as Petitioner, possess only a diminished right of privacy and may be subjected to search without a warrant or probable cause.[30] Judge Zagelow stated that therefore, just as in Lucas, Petitioner should expect close scrutiny by the State.[31] He further stated that the State need not prove probable cause for issuance of a bench warrant when a defendant has willfully violated conditions of release, citing CrR 3.2(j)(1).[32] He indicated that the affidavit and application nevertheless must indicate a well-founded suspicion upon which a warrant could be issued.[33] He concluded the affidavit of Mr. Acosta met that standard.[34]
In a letter dated February 26, 1999 denying Petitioner's motion to suppress evidence "gathered pursuant to an arrest warrant," Judge Robert L. Zagelow explained his conclusion that there was no requirement under CrR 3.2(j)(1) "that the warrant issue only upon probable cause." He then stated:
An Affidavit was filed in this case by the Prosecuting Attorney which alleged, among other things, that a probationer in court during Ms. Fisher's plea of guilty told a probation officer that Ms. Fisher indicated "... there was no way she was going to stick around for sentencing." The report was unsolicited from the probationer. A failure to return for sentencing would have been a violation of the conditions of Release imposed in both cause numbers. This information, given in the context of an upcoming sentencing with significant standard range institution time and with the other allegations of continued drug affiliation, constituted a "well-founded suspicion" upon which a warrant could be issued. In that State v. Keller involved a warrantless search based on ambiguous conditions of release, it is not controlling.
The defendant's Motion for Suppression is denied.[[35]]
On March 3, 1999 the jury found Petitioner Fisher "guilty" of possession of methamphetamine (Count I), possession of less than 40 grams of marijuana (Count II), and possession of drug paraphernalia (Count III), and "not guilty" of assault.[36] On March 3, 1999, the court sentenced her to a standard range sentence of six months to run concurrently with the sentences for her 1998 convictions.[37]
Petitioner moved for a new trial following the jury verdict on the ground that the court abused its discretion in precluding introduction of the out-of-court statement of Ms. Kelly Hall.[38] The court denied the motion based on its previous reasoning that the statement constituted hearsay.[39] On April 14, 1999, Petitioner filed a timely notice of appeal to the Court of Appeals, Division III.[40] On January 9, 2001 the Court of Appeals affirmed the conviction, concluding that
probable cause was not required for the issuance of a bench warrant under CrR 3.2(j)(1) for a person who has been adjudicated guilty of a felony pending sentence[[41]].... [T]he court could authorize her *372 [Petitioner's] detention based upon a well-founded suspicion that a probation violation had occurred,[[42]] because the court has a continuing interest in supervising Ms. Fisher which is the same interest the court has in supervising parolees, probationers, and convicted felons whose sentences are stayed pending appeal.... [T]he trial court properly excluded the statement as hearsay.[[43]]
Petitioner Fisher petitioned this court for review of the decision of the Court of Appeals which was granted on July 10, 2001.

DISCUSSION
The order of the Walla Walla County Superior Court dated December 23, 1998 released Petitioner Fisher pending trial under CrR 3.2(a). That rule provides in part:
"Any person, other than a person charged with a capital offense, shall at the preliminary appearance or reappearance pursuant to rule 3.2.A or CrRLJ 3.2.1 be ordered released on the accused's personal recognizance pending trial unless the court determines that such recognizance will not reasonably assure the accused's appearance.... If the court finds that release without bail should be denied or that conditions should attach to the release on personal recognizance, other than the promise to appear for trial, the court shall proceed to determine whether probable cause exists to believe that the accused committed the offense charged, unless this determination has previously been made by a court...."[[44]]
The parties agree that the order authorizing the bench warrant for Petitioner's arrest was entered pursuant to CrR 3.2(j)(1),[45] which provides:
(1) Arrest With Warrant. Upon the court's own motion or a verified application by the prosecuting attorney alleging with specificity that an accused has willfully violated a condition of the accused's release, a court shall order the accused to appear for immediate hearing or issue a warrant directing the arrest of the accused for immediate hearing for reconsideration of conditions of release pursuant to section (i).[[46]]
Petitioner Fisher's principal argument is that the court erroneously issued the order authorizing the bench warrant for her arrest without probable cause[47] because CrR 3.2(j)(1) requires probable cause for issuance of a bench warrant, and thus the court should have suppressed and excluded all evidence obtained incident to her arrest on the bench warrant. To bolster this contention, Petitioner maintains that under CrR 3.2(j)(1) the requirement of probable cause is inferred by reading it in context with CrR 3.2(j)(2), CrR 3.2A, and CrR 2.2(a), all of which specifically require probable cause for issuance of a warrant of arrest.[48] Petitioner contends that *373 this court, in adopting the Superior Court Rules, assumed, without specifically mentioning it, that all warrants issued under CrR 3.2(j)(1) require a showing of probable cause.[49] Petitioner cites no authority for this contention.
Petitioner also asserts that if CrR 3.2(j)(1) does not require probable cause, the rule violates the Fourth Amendment to the United States Constitution[50] which prohibits issuance of a warrant without probable cause.[51] She urges the court to find an implicit requirement of probable cause prior to issuance of a bench warrant. In support of her contention, Petitioner asks this court to follow the reasoning in State v. Klinker and Bacon v. United States.[52]
This court in Klinker addressed the constitutionality of the filiation statute which authorized arrest and detention of a putative father upon filing of a verified complaint by an interested private party.[53] This court declared the statute unconstitutional within the meaning of Fourth Amendment due process.[54]
The court observed that former RCW 26.24.010 (1970) required a judge to issue a warrant upon receipt of a complaint without even considering its validity.[55] The court reasoned that deviation from probable cause jurisprudence was inappropriate in the context of the statute.[56] The court observed that the statute circumvented the purpose behind the warrant requirement, which is "designed to prevent unjustified intrusions on liberty by [government]" and to safeguard this purpose a warrant requires that the judgment of an issuing judge be based on probable cause.[57]
The court reasoned that former RCW 26.24.010 violated the Fourth Amendment's general and fundamental requirement that searches and seizures be reasonable, stating that "[f]or an arrest to be `reasonable' it must serve some governmental interest which is adequate to justify the imposition on the liberty of the individual."[58] In determining the reasonableness of the arrest in that case, the court applied a sliding scale analysis in which greater intrusion requires greater justification, and forbids intrusions where *374 there is no adequate justification.[59] Using this approach, the reasoning of the majority chiefly focused on the private citizen's constitutionally protected interest and the government's interest in placing the burden of supporting children of unmarried parents on both parents instead of on the State.[60] It reasoned that laws permitting arrest for disputes outside the criminal context could be accomplished by less drastic means, such as filing a complaint and issuing a summons.[61] The court concluded that an arrest warrant in a filiation proceeding was "unnecessary and unreasonable within the meaning of the Fourth Amendment."[62]
The decision in Klinker followed the rationale of the United States Court of Appeals for the Ninth Circuit in Bacon v. United States.[63] In that case, under a material witness warrant, Defendant Bacon was arrested by FBI agents in Washington, D.C. to compel her appearance before a federal grand jury in Seattle.[64] The witness contested her detention, arguing that the material witness warrant did not provide for probable cause and thus violated the Fourth Amendment.[65] In response, the government maintained that the rule authorizing such an arrest did not explicitly require a determination of probable cause.[66] The Ninth Circuit Court agreed with the witness, and reasoned that the requirement of probable cause was not adverse to the public's legitimate interest in having grand jury witnesses provide testimony.[67]
Respondent State agrees that under normal circumstances an arrest with or without a warrant requires probable cause.[68] However, Respondent argues that this case does not fall under normal circumstances, but falls under an established exception to the probable cause requirement.[69] Respondent argues that Washington Courts of Appeal have established and consistently affirmed this exception in probationer and parolee cases, citing State v. Campbell, State v. Lucas, State v. Patterson, and State v. Simms.[70] Those cases, Respondent contends, all similarly questioned whether a warrant or warrantless search authorized by statute, based on less than probable cause, violated a parolee's or a probationer's constitutional rights.[71] The courts concluded that only a well-founded suspicion of a violation is required instead of probable cause.
Premising its argument on State v. Lucas, Respondent asks this court to affirm the determination of the Court of Appeals which agreed that Petitioner Fisher's situation more closely parallels that of a probationer or parolee instead of that of the accused in Klinker or the material witness in Bacon.[72]
In Lucas, Defendant Lucas was convicted of several crimes and granted a conditional release pending appeal of his previous convictions.[73] By signature he acknowledged that, as a condition of release, he would be required to submit to a search when ordered *375 by a probation officer.[74] Subsequently, two probation officers went to his home to conduct a transfer interview and observed contraband through sliding glass doors. Four days later they arrested him after conducting a warrantless search of his home.[75] He moved to suppress the evidence discovered during the warrantless search.[76] The court in that case reasoned that parolees and probationers are excepted from the probable cause requirement for search warrants and that they have a diminished right of privacy because of the State's continuing interest in the defendant and supervision of the defendant as a probationer.[77] The court further stated the defendant should expect close scrutiny by State officers and agents.[78] Accordingly, the court concluded the warrantless search did not violate constitutional protections because Defendant Lucas, who had been released on conditions pending appeal, had the same diminished expectation of privacy as a probationer serving a sentence.[79]
This case, however, is distinguishable from cases cited by both Petitioner and Respondent. Klinker is dissimilar in several respects. Most significant is the fact the case involved due process rights of an accused, unlike this case which involves a defendant who has already been adjudged "guilty" after her plea of "guilty."[80] Both circumstances raise different expectations of privacy and levels of constitutional protections. An accused's liberty is subject to restraint through an arrest and the jurisdiction of the courts.[81] A convicted and sentenced felon is subject to the jurisdiction of the Department of Corrections.[82] A convicted felon who awaits sentencing is still subject to the court's jurisdiction, but yet does not possess the same constitutional rights as one merely accused.[83]
Petitioner Fisher's status as a convicted offender does not fall within the literal meaning of an accused under CrR 3.2(j)(1).[84] Instead, her case comes under CrR 3.2(f), which provides:
Release After Finding or Plea of Guilty. After a person has been found or pleaded guilty, and subject to RCW 9.95.062, 9.95.064, 10.64.025, and 10.64.027, the court may revoke, modify, or suspend the terms of release and/or bail previously ordered.[[85]]
Accordingly, her rights must be analyzed not from the status of an accused person, but *376 from her status as a convicted felon released on personal recognizance and awaiting sentencing, reading CrR3.2(j)(1) together with CrR3.2(f).
Neither Petitioner nor Respondent provides compelling arguments or controlling case law addressing the principal issue in this case. Respondent's discussion of Lucas, however, at least more adequately focuses on the issue. In comparison with Klinker, the Lucas case is more closely analogous to this case. As in Lucas, Petitioner Fisher was not in custody after her conditional release pending sentencing following her conviction on drug charges. She, like the defendant in Lucas, having pleaded "guilty" and having been adjudged "guilty," has a diminished right of privacy because of the State's continuing interest in supervising convicted defendants.[86] Some limitations are placed on the constitutional rights of defendants after they have been convicted.[87] In this case, Petitioner Fisher was convicted of a felony. Thus her liberty is appropriately limited as was the liberty of the defendant in Lucas.
Our Court of Appeals cases suggest that an exception to the probable cause requirement exists when a defendant adjudged "guilty" of a felony is released with specified conditions.[88] Although those cases questioned the constitutionality of RCW 9.94A.195 permitting searches without probable cause, that statute, like CrR 3.2(j)(1), also provides for arrest without determination of probable cause.[89] In upholding the constitutionality of RCW 9.94A.195, the Courts of Appeal in Lucas and Massey have ruled that "search and seizure of [probationer's or parolee's] person" only requires a showing of reasonable cause and not probable cause.[90] Thus, the lower standard, reasonable cause, satisfies the Fourth Amendment when a bench warrant is issued for a convicted felon who has been released subject to conditions.[91] This undermines Petitioner's argument that the Fourth Amendment requires probable cause for issuance of a bench warrant.[92]
Respondent is correct in its contention that a "well-founded suspicion" that violation of a condition of release has occurred should be required for the court to issue a bench warrant under CrR 3.2(j)(1) for persons who have pleaded "guilty" to a felony and await sentencing. Under the facts in this case, the rule must be read together with CrR 3.2(f).

Well-Founded Suspicion of Violation of a Condition of Release
The arrest of Petitioner Fisher under the bench warrant in this case was not reasonable because the State in its application for the bench warrant did not provide specific and articulable facts of a willful violation of any condition of her release pending sentencing. The Fourth Amendment requires, at a minimum, that the information the officer relies upon at least carry some indicia of reliability.[93] The application and affidavit submitted in support of the bench warrant for arrest of Petitioner did not provide any indicia of reliability or specificity that Petitioner had violated any condition of her release.[94] There was at best a vague suggestion that she might have violated the condition that she "have no violation of any *377 criminal laws." But there is absolutely no indication of what laws, if any, she might have violated. The simplest test is to ask the question, "what condition of her release does the State in its application claim was violated by Petitioner Fisher?" From the record in this case, the answer can only be "none," even applying the "well-founded suspicion" standard.
Decisions of our Courts of Appeal have addressed the question of "probable cause" and "well-founded suspicion" for arrests without warrants.[95] While not squarely on point with this case, they are of value at least in focusing on conceptual references.
In State v. Simms, a warrantless search of a parolee's home, based upon an anonymous tip that the informant and defendant were engaged in a drug operation at the defendant's home, was held unconstitutional. The court stated the Fourth Amendment requires that before a parole officer can act upon the tip of an informer, "the information upon which the officer acts must at least carry some indicia of reliability to support an inference that the informant is telling the truth.... [H]e must make some attempt to ascertain that he is acting on something more than casual rumor, general reputation, or a mere whim."[96]
In State v. Patterson, a warrantless search of a parolee's vehicle, upon an anonymous tip substantiated by other evidence, was held to be based upon reasonable suspicion.[97] In that case, the store clerk on duty at the time of the robbery identified the defendant in a photomontage and there was other evidence to connect the parolee with the robbery, thus constituting "reasonable suspicion."
In State v. Lucas, probation officers observed a container of marijuana in the defendant's home. Four days later the officers conducted a warrantless search of the home. The court concluded that this observation, coupled with the fact the defendant acted in a nervous manner when the officers arrived at his home to conduct a transfer interview, constituted a well-founded suspicion that the defendant was involved in criminal activity in violation of his conditions of release.[98]
The affidavit of Deputy Prosecuting Attorney Acosta supporting the bench warrant in this case does not meet the well-founded suspicion standard. The unidentified probationer's statement concerning what Petitioner Fisher allegedly said in court and the probationer's impression of Petitioner's physical state do not have any indicia of reliability or truthfulness.[99] Mere claims by the unnamed grandmother of Petitioner's child that she knew Petitioner spent considerable time at a known drug user's home and used drugs there bears no indicia of reliability. Detective Castillo's observation that Petitioner visited a known drug user's home, even if true, does not constitute a violation of any condition of her release.
The facts asserted in the application and affidavit do not measure up to the necessary well-founded suspicion that Petitioner Fisher violated any condition of her release pending sentencing to justify the Superior Court's issuance of a bench warrant for her arrest. The consequent arrest violated Petitioner's Fourth Amendment due process rights. Therefore, the evidence obtained as a result of the unlawful arrest should have been suppressed in her criminal trial.[100]

*378 ADMISSION OF OUT-OF-COURT STATEMENT BY THIRD PARTY

Petitioner asserts that the Court of Appeals was in error in approving a ruling by the trial court which excluded an out-of-court statement made by Ms. Kelly Hall as inadmissible hearsay, thus depriving Petitioner of her defense of unwitting possession.[101] She argues that the statement was not hearsay because it was not offered to prove the truth of the matter asserted,[102] but was offered for the nonhearsay purpose of showing the effect the statement had on Petitioner.[103] It is not necessary for us to address this issue because of the conclusion we reach in this case.

CONSTITUTIONALITY OF C rR 3.2(j)(1)
Petitioner urges this court to declare CrR 3.2(j)(1) unconstitutional if the court concludes the rule does not implicitly contain a requirement of probable cause.[104] She has not presented a sufficient basis for support of this argument.

SUMMARY AND CONCLUSIONS
The Court of Appeals correctly concluded probable cause was not required for the issuance of a bench warrant under CrR 3.2(j)(1) for a person who has been adjudicated guilty of a felony and released pending sentencing. The court, however, erroneously concluded the application and affidavit in support of the bench warrant constituted a well-founded suspicion that Petitioner Fisher had violated any condition of her release pending sentencing.
We agree with decisions of our Courts of Appeal which suggest that an exception to the probable cause requirement exists when a defendant adjudged "guilty" of a felony is released on specified conditions. Those cases all similarly questioned whether a warrant or warrantless search authorized by statute, based on less than probable cause, violated a parolee's or a probationer's constitutional rights. The courts concluded that only a well-founded suspicion of a violation is required instead of probable cause.
Petitioner Fisher, like the defendant in State v. Lucas, having pleaded "guilty" and having been adjudged "guilty," has a diminished right of privacy because of the State's continuing interest in supervising convicted defendants. Some limitations are placed on the constitutional rights of defendants after they have been convicted. In this case, Petitioner Fisher pleaded "guilty" to a felony. Thus her liberty is appropriately limited as was the liberty of the defendant in Lucas.
Applying CrR 3.2(j)(1) in this case does not violate the Fourth Amendment requirement that searches and seizures be reasonable. For an arrest to be "reasonable" it must serve some governmental interest which is adequate to justify imposition on the liberty of the individual. The reasonableness of an arrest in a given context must be determined on the basis of the particular interest involved. In this case, the State's interest in supervising defendants outweighs the accused's interest, whose liberty is already restrained through arrest and subject to the court's jurisdiction. Therefore, in this context there is no requirement for probable cause to issue an arrest warrant under CrR 3.2(j)(1) or the more applicable rule, CrR 3.2(f).
Respondent is correct in its contention that a "well-founded suspicion" that violation of a condition of release on personal recognizance has occurred is sufficient for the court to issue a bench warrant under CrR 3.2(j)(1) for persons who have pleaded "guilty" of a felony and await sentencing. Under the facts in this case, this rule must be read together with CrR 3.2(f). However, the application and affidavit of Deputy Prosecuting Attorney Acosta supporting the bench warrant in this case does not meet the well-founded suspicion standard. The Fourth Amendment requires, at a minimum, that the information the judicial officer relies upon at least carry some indicia of reliability. The affidavit submitted in support of the bench warrant for *379 arrest of Petitioner did not provide any indicia of reliability or specificity that Petitioner had violated any condition of her release. The evidence obtained as a result of the unlawful arrest therefore should have been excluded in her criminal trial. We reverse the conviction in this case.
We affirm in part the decision of the Court of Appeals, Division III, concluding that probable cause is not required for issuance of a bench warrant under CrR 3.2(j)(1) for a person who has been adjudged guilty of a felony pending sentence, but reverse in part the decision that the affidavit in support of the bench warrant in this case constituted a well-founded suspicion that Petitioner had violated any condition of her release pending sentencing.
ALEXANDER, C.J., JOHNSON, MADSEN, IRELAND, BRIDGE, CHAMBERS and OWENS, JJ., concur.
SANDERS, J. (concurring)
The Warrant Clause provides, "no warrants shall issue, but upon probable cause." U.S. Const. amend. IV. No means no.
NOTES
[1] Respondent accepts the facts asserted in Petitioner's brief with variation in facts asserted in argument. See Resp't's Br. at 2, Pet'r's Br. at 2. See also 1 Verbatim Report of Proceedings at 130 (Cause Number XX-X-XXXXXX); Clerk's Papers at 50.
[2] 1 Verbatim Report of Proceedings at 130.
[3] Id. (Cause Number XX-X-XXXXX-X). See Clerk's Papers at 50.
[4] Suppl. Clerk's Papers at 72 (Order Establishing Conditions of Release Pending Trial Pursuant to CrR 3.2).
[5] Id. at 72.
[6] Clerk's Papers at 35.
[7] Clerk's Papers at 34, 35.
[8] Id. at 35.
[9] Id. at 3.
[10] 1 Report of Proceedings at 3, 4. See also Clerk's Papers at 1 (Arrest report).
[11] 1 Report of Proceedings at 4.
[12] Id.
[13] Id. at 4.
[14] Id.
[15] Id.
[16] Id. at 5.
[17] 1 Report of Proceedings at 5.
[18] Id. at 6.
[19] Id. at 7, 8.
[20] Id.
[21] 1 Report of Proceedings at 17.
[22] Clerk's Papers at 1.
[23] Id.
[24] Id. at 6, 7.
[25] 1 Report of Proceedings at 123-24.
[26] Id. at 94.
[27] Id. at 95.
[28] Id.
[29] Clerk's Papers at 9.
[30] See Report of Proceedings, February 23, 1999; see also Clerk's Papers at 36, 37. State v. Lucas, 56 Wash.App. 236, 783 P.2d 121 (1989), review denied, 114 Wash.2d 1009, 790 P.2d 167 (1990); State v. Simms, 10 Wash.App. 75, 516 P.2d 1088 (1973), review denied, 83 Wash.2d 1007 (1974).
[31] Clerk's Papers at 36, 37.
[32] Id.
[33] Id.
[34] Id.
[35] Id. at 36-37.
[36] Clerk's Papers at 38-39.
[37] Id. at 54.
[38] Id. at 45-48.
[39] 1 Report of Proceedings at 151-52.
[40] Id. at 65.
[41] State v. Fisher, 104 Wash.App. 772, 780, 17 P.3d 1200 (2001). The Court of Appeals, Division III, initially decided not to publish its opinion. After considering motions to publish submitted by the Prosecuting Attorney and the Washington Association of Prosecuting Attorneys, the court ordered publication. See Pet. for Review at A 15, Order Granting Motions to Publish, dated February 1, 2001.
[42] Fisher, 104 Wash.App. at 780, 17 P.3d 1200.
[43] Id. at 780, 17 P.3d 1200.
[44] CrR 3.2(a).
[45] See Pet'r's Br. at 7.
[46] CrR 3.2(j)(1) (emphasis added).
[47] The Fourth Amendment requires that searches and seizures be "reasonable." "Reasonableness" is conterminous with "probable cause." Probable cause "boils down, in criminal situations, to a simple determination of whether the relevant official, police or judicial, could reasonably believe that the person to be arrested has committed the crime." State v. Klinker, 85 Wash.2d 509, 521, 537 P.2d 268 (1975) (citing Giordenello v. United States, 357 U.S. 480, 485, 78 S.Ct. 1245, 2 L.Ed.2d 1503 (1958)).
[48] See Pet'r's Br. at 7-11.

CrR 3.2(j)(2) reads as follows:
Arrest Without Warrant. A law enforcement officer having probable cause to believe that an accused released pending trial for a felony is about to leave the state or has violated a condition of such release under circumstances rendering the securing of a warrant impracticable may arrest the accused and take [the accused] forthwith before the court for reconsideration of conditions of release pursuant to section (i).
(Emphasis added).
CrR 3.2A provides in pertinent part:
(a) Probable Cause Determination. A person arrested without a warrant shall have a judicial determination of probable cause ....
(b) How determined. The court shall determine probable cause on evidence presented ... for a warrant of arrest in rule 2.2....
(Emphasis added).
CrR 2.2(a) reads in part:
A warrant of arrest may not issue unless the court determines that there is probable cause to believe that the defendant committed the offense charged.
(Emphasis added).
[49] Pet'r's Br. at 11.
[50] The Fourth Amendment to the United States Constitution provides:

The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no warrants shall issue, but upon probable cause, supported by oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized.
(Emphasis added).
[51] Pet'r's Br. at 1, 11.
[52] State v. Klinker, 85 Wash.2d 509, 537 P.2d 268 (1975); Bacon v. United States, 449 F.2d 933 (9th Cir.1971).
[53] Klinker, 85 Wash.2d at 510, 537 P.2d 268. The case involved the "filiation" statute, former RCW 26.24.010 (1970), which provided in part:

When an unmarried woman shall be pregnant or delivered of a child which shall not be the issue of lawful wedlock, complaint may be made in writing by said unmarried woman ... to any justice of the peace ... accusing, under oath, a person with being the father of such child, and it shall be the duty of such justice forthwith to issue a warrant against the person so accused and cause him to be brought forthwith before such justice.
Former RCW 26.24.020 (1971) provided for release of the accused on bond pending the hearing. Chapter 26.24 RCW was repealed in 1975-76 and superseded by the Uniform Parentage Act, chapter 26.26 RCW.
[54] Id. at 516, 523, 537 P.2d 268.
[55] Id. at 516, 517, 537 P.2d 268.
[56] Id. at 518, 537 P.2d 268.
[57] Id. at 517, 518, 537 P.2d 268 (citing Gerstein v. Pugh, 420 U.S. 103, 95 S.Ct. 854, 43 L.Ed.2d 54 (1975) (A rule allowing issuance of an arrest warrant on the basis of information alone is no longer constitutionally permissible.)); Giordenello v. United States, 357 U.S. 480, 486, 78 S.Ct. 1245, 1250, 2 L.Ed.2d 1503 (1958) ("The Commissioner must judge for himself the persuasiveness of the facts relied on by a complaining officer to show probable cause. He should not accept without question the complainant's mere conclusion that the person whose arrest is sought has committed a crime.").
[58] Klinker, 85 Wash.2d at 519, 537 P.2d 268.
[59] Id. at 519, 520, 537 P.2d 268 (citing Bacon, 449 F.2d at 942).
[60] Id. at 521, 522.
[61] Id. at 522.
[62] Id.
[63] Klinker, 85 Wash.2d at 523, 537 P.2d 268; Bacon, 449 F.2d 933.
[64] Bacon, 449 F.2d at 934, 935.
[65] Id. at 941, 942.
[66] Id.
[67] Id. at 942, 943.
[68] Resp't's Br. at 3.
[69] Id.
[70] Id. State v. Campbell, 103 Wash.2d 1, 22, 691 P.2d 929 (1984), cert. denied, 471 U.S. 1094, 105 S.Ct. 2169, 85 L.Ed.2d 526 (1985); State v. Lucas, 56 Wash.App. 236, 783 P.2d 121 (1989), review denied, 114 Wash.2d 1009, 790 P.2d 167 (1990); State v. Patterson, 51 Wash.App. 202, 752 P.2d 945 review denied, 111 Wash.2d 1006, 1988 WL 631972 (1988); State v. Simms, 10 Wash. App. 75, 516 P.2d 1088 (1973), review denied, 83 Wash.2d 1007 (1974). See also Griffin v. Wisconsin, 483 U.S. 868, 107 S.Ct. 3164, 97 L.Ed.2d 709 (1987).
[71] Id.
[72] Pet'r's Br. at 4; Fisher, 104 Wash.App. at 779, 17 P.3d 1200.
[73] Lucas, 56 Wash.App. at 237, 783 P.2d 121.
[74] Id. at 237-38, 783 P.2d 121.
[75] Id. at 238, 783 P.2d 121.
[76] Id. at 239, 783 P.2d 121.
[77] Id. at 240, 783 P.2d 121 (citing State v. Lampman, 45 Wash.App. 228, 233 n. 3, 724 P.2d 1092 (1986)). See also Griffin v. Wisconsin, 483 U.S. 868, 107 S.Ct. 3164, 97 L.Ed.2d 709 (1987).
[78] Lucas, 56 Wash.App. at 240, 783 P.2d 121.
[79] Id. at 241, 783 P.2d 121.
[80] An "accused" is a person who has been subjected to actual restraints on liberty through an arrest or formal indictment or information, but has not yet been convicted or sentenced. See BLACK'S LAW DICTIONARY 22 (7th ed.1999). See, e.g., U.S. Const. amend. VI. (Presumption of innocence); see, e.g., State v. Crediford, 130 Wash.2d 747, 759, 927 P.2d 1129 (1996) ("[E]very person accused of a crime is constitutionally endowed with overriding presumption of innocence, a presumption that extends to every element of the charged offense.").
[81] A court may deny bail or release an accused subject to conditions. See CrR 3.2(a).
[82] See Title 72 RCW. RCW 72.04A.050 grants the secretary of corrections powers and duties of the state relating to supervision of parolees. RCW 72.04A.090 allows a probation or parole officer to arrest without a warrant a parolee who breaches a condition of release.
[83] See McCarthy v. United States, 394 U.S. 459, 89 S.Ct. 1166, 22 L.Ed.2d 418 (1969).
[84] As in Lucas, Petitioner Fisher agreed to arrest and revocation of her pretrial release if she violated any conditions of release. When she signed the order of conditional release on December 23, 1998, she retained status as an accused and CrR 3.2(j)(1) properly applied to her situation. On January 7, 1999, the day she pleaded "guilty," her status changed to that of a convicted felon awaiting sentencing. As a result, CrR 3.2(f), instead of CrR 3.2(j)(1), is the rule applicable in this case.
[85] CrR 3.2(f). RCW 10.64.025 and 10.64.027 relate to conditions of release of a defendant who has been found "guilty" of a felony and is awaiting sentencing. Neither statute refers to arrest upon violation of conditions of release.
[86] See Lucas, 56 Wash.App. at 240, 783 P.2d 121.
[87] See Lucas, 56 Wash.App. at 236, 783 P.2d 121; State v. Massey, 81 Wash.App. 198, 913 P.2d 424 (1996).
[88] Id.
[89] RCW 9.94A.195; CrR 3.2(j)(1). A warrantless arrest/search and an arrest/search by warrant must meet the same "quantum of evidence" to satisfy the probable cause requirement within the Fourth Amendment. See Wayne R. LaFave, Search and Seizure: A Treatise on the Fourth Amendment § 3.1(b) (3d ed.1996).
[90] See Lucas, 56 Wash.App. at 236, 783 P.2d 121; Massey, 81 Wash.App. 198, 913 P.2d 424.
[91] Id. See also RCW 9.94A.195 (requiring reasonable cause in an arrest of an offender who has violated terms of conditions of release).
[92] Pet'r's Br. at 11, 12.
[93] Simms, 10 Wash.App. at 88, 516 P.2d 1088.
[94] See Suppl. Clerk's Papers at 72-74.
[95] See Simms, 10 Wash.App. at 87-88, 516 P.2d 1088; Patterson, 51 Wash.App. at 208-09, 752 P.2d 945; Lucas, 56 Wash.App. at 244-45, 783 P.2d 121.
[96] Simms, 10 Wash.App. at 88, 516 P.2d 1088.
[97] Patterson, 51 Wash.App. at 203-04, 752 P.2d 945.
[98] Lucas, 56 Wash.App. at 244-45, 783 P.2d 121.
[99] See Simms, 10 Wash.App. at 88, 516 P.2d 1088.
[100] Simms, 10 Wash.App. at 81, 516 P.2d 1088 ("The law is well established in this state, consistent with the decisions of the United States Supreme Court, that in a criminal prosecution, evidence unlawfully seized will be excluded." (emphasis omitted)) But the exclusionary rule does not apply in revocation hearings. Simms, 10 Wash.App. at 79-81, 516 P.2d 1088 (citing State v. Biloche, 66 Wash.2d 325, 327, 402 P.2d 491 (1965); United States ex rel. Sperling v. Fitzpatrick, 426 F.2d 1161 (2d Cir.1970); In re Martinez, 1 Cal.3d 641, 83 Cal.Rptr. 382, 463 P.2d 734 (1970); Morrissey v. Brewer, 408 U.S. 471, 92 S.Ct. 2593, 33 L.Ed.2d 484 (1972)).
[101] Pet. for Review at 8, 12-14.
[102] See ER 801-803.
[103] Pet. for Review at 12.
[104] Pet. for Review at 11-12.