IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION THREE

| | | |
|---|---|---|
| STATE OF WASHINGTON, | ) | |
| | ) | No. 33149-1-III |
| Respondent, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| JACLYN RAE SLEATER, | ) | PUBLISHED OPINION |
| | ) | |
| Appellant. | ) | |

KORSMO, J. — An arrest warrant issued for Jaclyn Sleater when she did not schedule an appearance in court to explain why she had not made a payment on her outstanding legal financial obligations (LFOs). We conclude that a warrant should not have issued absent a court directive to appear at a specific hearing. We therefore reverse the conviction for possession of methamphetamine discovered when she was arrested on the outstanding warrant.

FACTS

The relevant facts primarily involve Ms. Sleater's earlier felony convictions for various drug offenses. As of April 2014, Ms. Sleater owed LFOs on three cause numbers and was making a combined monthly payment of $75 toward the three cases. She was entered into Benton County's "pay or appear" program. It required her to make her LFO

payments every month or appear to schedule a hearing to explain why she could not make the payments. The program agreement also stated that if the defendant did not make a payment and failed to schedule a hearing, "a warrant will be issued for the Defendant's arrest." Clerk's Papers (CP) at 39.

Payments were being made on her behalf by Ms. Sleater's mother. Her mother made a $150 on-line payment on April 17, 2014. The computer did not apportion the sum among the three accounts, but applied all of the money to the one cause number identified with the payment.[1] The other two counts were four and seven months in arrears. The clerk's office sought and obtained arrest warrants on April 22, 2014 for Ms. Sleater on those two cause numbers since she had not made payments and had not scheduled a hearing to explain the lack of payments.

Officers arrested Ms. Sleater on the two warrants on May 16, 2014. She was in possession of methamphetamine at the time of her arrest. Four days later the prosecutor filed one count of possession of a controlled substance. Her appointed counsel moved to suppress the evidence, arguing that the arrest was invalid on multiple bases, including a claim that the warrants were wrongly issued. The trial court denied the motion. Ms.

---

[1] The mother testified that she was told by clerk's office employees that the money would be apportioned and only one cause number needed to be listed. The clerk's office provided testimony that they had no record of speaking with the mother. The payment history showed that in most months the electronic payment would be applied to a single cause number, but the cause number would vary from month to month.

2

No. 33149-1-III
*State v. Sleater*

Sleater was subsequently convicted at a bench trial on stipulated facts. She timely appealed to this court.

## ANALYSIS

Ms. Sleater argues that the arrest warrants were invalidly issued without consideration of alternatives to arrest in violation of the Fourth Amendment to the United States Constitution.[2] We agree. The LFO aspect of this case presents a twist on typical Fourth Amendment analysis because enforcement of LFOs is a civil action, rather than a criminal one. The issuance of an arrest warrant in this situation therefore requires consideration of the Fourth Amendment's application in the civil arena.

The Fourth Amendment provides protection against "unreasonable . . . seizures." A seizure is reasonable if it serves a "governmental interest which is adequate to justify imposition on the liberty of the individual." *State v. Fisher*, 145 Wn.2d 209, 232, 35 P.3d 366 (2001). That determination is made "on the basis of the particular interests involved." *Id.*; *accord, State v. Klinker*, 85 Wn.2d 509, 519-20, 537 P.2d 268 (1975).

The principles governing LFOs, having been the subject of much litigation in recent years, are well understood. It is permissible to impose court costs on a defendant

---

[2] In the trial court, Ms. Sleater pursued a theory that the warrants wrongly were issued because she had paid in accordance with the clerk's directions. As a result of that argument, the facts concerning the payment history and the pay or appear program were developed. Accordingly, we conclude that this particular argument is a manifest constitutional claim with sufficient evidence in the record to justify our consideration under RAP 2.5(a)(3). *See State v. McFarland*, 127 Wn.2d 322, 333-34, 899 P.2d 1251 (1995).

3

upon conviction as long as certain constitutional safeguards are in place. *Fuller v. Oregon*, 417 U.S. 40, 45-54, 94 S. Ct. 2116, 40 L. Ed. 2d 642 (1974) (upholding Oregon's costs statute). It also is constitutional to impose costs "upon those with a foreseeable ability to meet it" and to enforce them "against those who actually become able to meet it without hardship." *Id.* at 54. However, it violates due process to revoke probation for failure to pay fines if the defendant is unable to pay due to indigence. *Bearden v. Georgia*, 461 U.S. 660, 672-73, 103 S. Ct. 2064, 76 L. Ed. 2d 221 (1983). Nor can a state impose a fine and convert it to jail time solely because a defendant has no ability to pay the fine. *Tate v. Short*, 401 U.S. 395, 398, 91 S. Ct. 668, 28 L. Ed. 2d 130 (1971). The State must afford the defendant a hearing before jailing him for failing to pay his obligations. *Smith v. Whatcom County Dist. Court*, 147 Wn.2d 98, 112, 52 P.3d 485 (2002). While the court can put the burden to prove inability to pay on the defendant, it still has a duty to inquire into a defendant's ability to pay fines prior to jailing him. *Id.*

Washington's processes for imposing costs and sanctioning those who do not pay comply with the demands of the constitution. *See generally, State v. Blank*, 131 Wn.2d 230, 930 P.2d 1213 (1997). Enforcement of LFOs is a civil proceeding. RCW 10.01.180(1); 147 Wn.2d at 105 (recognizing that RCW 10.01.180(1)[3] authorizes a civil

---

[3] "A defendant sentenced to pay a fine or costs who defaults in the payment thereof or of any installment is in contempt of court . . . . The court may issue a warrant

contempt proceeding). The statute authorizes issuance of an arrest warrant for a person who fails to pay her costs. RCW 10.01.180(1) ("The court may issue a warrant of arrest for his or her appearance."). Ms. Sleater argues, therefore, that an arrest warrant in the LFO context must comport with the Fourth Amendment's requirements for civil cases. She places her argument squarely on the back of *Klinker*.

*Klinker* involved a filiation statute that allowed a justice of the peace to issue a warrant for arrest of a putative father upon receipt of a complaint from an unmarried woman, who was pregnant or already had a child, alleging a particular individual is the father. Former RCW 26.24.010 (1919), repealed by LAWS OF 1975-76, 2d Ex. Sess., ch. 42, § 41).[4] In *Klinker*, a complaint was submitted, a warrant issued, and Mr. Klinker was arrested on the warrant. 85 Wn.2d at 510. He successfully moved to dismiss the complaint, arguing that the statute violated general due process principles. *Id.* at 510-11. Our court, however, ruled that the statute violated the Fourth Amendment's requirement that "arrests be reasonable." *Id.*

---

of arrest for his or her appearance." RCW 10.01.180(1).

[4] "When an unmarried woman shall be pregnant or delivered of a child which shall not be the issue of lawful wedlock, *complaint may be made in writing* by said unmarried woman . . . to any justice of the peace . . . accusing, under oath, a person with being the father of such child, and it shall be the duty of such justice forthwith *to issue a warrant against the person* so accused and cause him to be brought forthwith before such justice." (Emphasis added.)

The court reasoned that the Fourth Amendment applied equally in a civil situation as in a criminal one. *Id.* at 515. In the criminal context, the situation is straightforward: reasonableness means probable cause to believe that a crime has been committed. *Id.* at 520-21. However, in the civil context, the issue is more complicated. *Id.* at 521. The court first looked to the governmental interest involved: "the need to insure that the burden of supporting illegitimate children will be equitably shared by both of its parents and will not be unnecessarily placed on the state." *Id.* While this interest was substantial, it did not justify arrest. *Id.* at 521-22. Arrest usually is only justified "when a person may flee from legal process, or where he may constitute a danger to the public if allowed to remain at large." *Id.* at 522. Ultimately, the court reasoned that in a civil situation, a court should issue a summons prior to an arrest warrant: "Where there is no special need for arrest, where some other means exists by which the governmental interest can be satisfied without such infringement on individual liberties, the issuance of an arrest warrant is not only unwise but constitutionally impermissible." *Id.* The court held, that, unless "there is probable cause to believe . . . he will flee the jurisdiction if given more conventional notice," "the justice may approve only a standard summons." *Id.* at 523. The statutory arrest process was ruled unconstitutional. *Id.* at 524.

*Klinker* remains good law. *See Fisher*, 145 Wn.2d at 221-26 (declining to apply *Klinker* to a defendant who violated the conditions of her release prior to sentencing). More recently the court considered a due process challenge to an LFO collection

6

procedure in *State v. Nason*, 168 Wn.2d 936, 233 P.3d 848 (2010). There a defendant was repeatedly sanctioned for willfully failing to pay his LFOs. As a result of one hearing, the defendant was ordered to serve jail time for his violation and directed to make his next payment on a specific date. If he did not make the payment, he was required to report to jail to begin serving a 60 day sanction or file a motion to stay the obligation. *Id.* at 942. The court concluded that the provision violated due process of law because it required him to report to jail without a hearing on his ability to pay. *Id.* at 946.

We think that *Klinker* and *Nason* compel the result here. The effect of the arrest warrants was to require Ms. Sleater to go to jail for failing to pay her LFOs without first conducting an inquiry into her ability to pay them. The facts of this case demonstrate the need for such an inquiry. Ms. Sleater's mother did make a payment toward her daughter's LFOs, but through some type of error the payment was not reflected in all three files. A hearing before the warrants issued would have allowed the court to resolve the problem without the necessity of an arrest.

It is important to emphasize what we do not decide. Courts can still issue warrants for the arrest of defendants who do not appear in court to discuss their LFOs. However, *Nason* tells us that the courts cannot place the onus on the defendant to schedule her own hearing. Instead, we perceive that a summons or prior court order requiring the defendant

7

No. 33149-1-III
*State v. Sleater*

to attend a specific hearing is necessary before a warrant can issue to arrest someone for not appearing to explain why she is (apparently) not meeting her payment obligations.

Here, a warrant should not have issued for defendant's failure to pay without first determining the willfulness of that violation. Accordingly, the trial court erred in denying the suppression motion. The conviction is reversed.

_____
Korsmo, J.

WE CONCUR:

_____
Fearing, C.J.

_____
Pennell, J.